694 So.2d 805 (1997)
Jean-Claude CHABERT, Appellant,
v.
Jacques Jean Yves BACQUIE, Appellee.
No. 95-1963.
District Court of Appeal of Florida, Fourth District.
May 14, 1997.
Rehearing and Certification Denied June 20, 1997.
*807 Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and George C.J. Moore, West Palm Beach, for appellant.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Paul W. Potter, Jr., Singer Island, for appellee.
FARMER, Judge.
This appeal raises issues novel to Florida jurisprudence, involving among others the recently enacted Florida Uniform Out-ofcountry Foreign Money-Judgment Recognition Act[1] and whether the statute can be retroactively applied. It also requires that we address a treaty providing for service of process abroad and whether a French judgment should be denied recognition on the ground that France refuses reciprocal recognition of similar judgments. In the end, we conclude that the lower court's order recognizing the challenged foreign judgment is final and affirm it.
Initially, we address the appealability of the order sought to be reviewed. It is designated as an order on a notice of objections and on a motion to strike. It overrules defendant's objections to recognition of the foreign judgment, denies defendant's motion for an order denying recognition, and grants plaintiff's motion to strike the objections and to recognize the foreign judgment. Ordinarily that would seem like the kind of order we lack jurisdiction to review, for orders merely granting or denying motions to strike or dismiss or summary judgment are not final and immediately reviewable. Dobrick v. Discovery Cruises Inc., 581 So.2d 645 (Fla. 4th DCA 1991), (order merely granting motion for summary judgment does not constitute final, appealable order).
*808 In this instance, however, the order does not merely grant a motion to strike or deny objections. It goes on to say the following:
"In essence, based upon a review of all of the foregoing material (and the translations provided therefor) this court finds that judgment set forth and attached to Plaintiff's Complaint is valid on its face, that the defendant was duly served with process at the trial level, that any failure of the defendant to receive actual notice of appeal was due to the failure of the defendant to notify the [French] Court of his change of address and not due to any lack of diligence on the plaintiff's part, and that the French Court followed procedural rules that would comport with notice requirements set forth in our own Florida Rules of Appellate Procedure.
"The Court also notes that it is clear from the face of the judgment sought to be enforced that the French Appellate Court did a full and complete review of the transcript and record of the lower Court where the defendant had been present and presenting evidence in connection with the case."
We must therefore analyze this holding to determine whether it endows the order with the kind of finality we require for appellate review.
The effect of overruling objections and granting recognition of a foreign judgment is that the foreign judgment is thereupon immediately enforceable as though it were a final judgment of a Florida court. See § 55.604(5), (6), and (7), Fla.Stat. (1995). The judgment creditor may have a writ of execution issued on the judgment, and it becomes a lien on real property of the judgment debtor in any county where a certified copy of the judgment is recorded with the land records. It thus becomes identical in effect with a judgment entered by a Florida court. Because an order expressly granting recognition of a foreign judgment has the same effect as a final judgment rendered by a Florida court, it is therefore reviewable as a final judgment.
The facts and circumstances of this case appear complicated but can be summarized as follows. In 1986, Bacquie[2] engaged Chabert to transport 1.5 million French francs from Paris to St. Martin in the French West Indies. The funds apparently were to be delivered to an official, a Notary, and ultimately used for the acquisition of real property there. Chabert checked the valise (with a 4-number combination lock) containing the currency on a Pan American flight to St. Martin, with stops in New York and Miami. Chabert declared the currency to customs officials in New York. When the plane arrived in St. Martin, the currency was missing and deemed stolen.
The record does not clearly show the domicile of Chabert. From 1977 to 1987, Chabert had a residence in St. Martin. Affidavits in the record show that he also maintained a residence in Illinois for some time before December 1986. From then until 1991, he maintained a Florida residence on Singer Island. Since 1991, he has maintained a residence in Palm Beach Gardens. The residences in the United States appear to be places where he received mail, because he states that upon changing his United States addresses he always notified the postal authorities with a forwarding address.
In 1986 Bacquie sued Chabert in a French court of general jurisdiction, the Tribunal de Grande Instance, comparable to our circuit court, in Basse-Terre, Guadeloupe.[3] He sought judgment for the missing currency plus interest. Chabert was served with process, and the French trial court acquired personal jurisdiction over him. Both parties appeared through counsel in Guadeloupe and presented evidence.
In April 1988, the French trial court entered judgment in favor of Chabert, concluding that the transaction was in violation of *809 French currency laws, and thus the breach of the agreement was irremediable. The final judgment of the French trial court listed Chabert's St. Martin address, for he apparently still maintained a residence in St. Martin when the French lawsuit was commenced. In May 1988, Bacquié took an appeal to a French appellate court, the Cour d'Appel de Basse-Terre. It is at this stage that events become more meaningful to the issues we decide today.
Under French law, an appeal is initiated by filing a déclaration d'appel with the tribunal. The court clerk then sends a notice by regular mail to the appellee that an appearance by an attorney (avocat) is necessary.[4] If the clerk's notice is returned by the post office, the clerk then forwards the returned notice to appellant's attorney. Appellant's attorney must then "cause to be served" on the appellee a "citation" giving notice that if appellee fails to appear through an attorney within 15 days a judgment may be rendered against him.[5]
By sometime in 1987, Chabert apparently no longer maintained a residence in St. Martin. Chabert argues that, owing to his residence in the United States, the attorney for Bacquié was obligated to serve him with the citation by sending the papers abroad. Under Article 684 of the French Revised Code of Civil Procedure, however, "[j]udicial documents to be served abroad are served to the Public Prosecutor."[6] This French legal provision is referred to in international law as notification "au parquet "i.e., notice by delivery of papers to a public official on behalf of the party to whom notice must be given. The decision of the French court of appeal expressly states that notification au parquet was duly effected.
Chabert never retained an attorney to represent him in the appeal in Guadeloupe. Ultimately, the French court of appeal reversed the trial court judgment in favor of Chabert and entered a money judgment against him for the missing francs, plus interest and attorney's fees. The appellate court's decision lists Chabert's full name and his Illinois residence address. As regards Chabert's failure to retain counsel, the judgment of the court of appeal recites:
"Though duly summoned by bailiff's process of May 23, 1989, Mr. Chabert did not retain any attorney. This appeal judgment shall consequently be rendered by default with respect to him in accordance with section 473, subsection 1, of the Revised Code of Civil Procedure."
Under French law, an appeal may include review of both fact and law, and the appellate court may even take additional evidence. Thus, on the merits of the disputed transaction, the court of appeal concluded:
"The trial court pronounced the agreement void as being contrary to business law and order on the grounds that Mr. BACQUIÉ did not submit proof that the sum of 1 500 000 FF, entrusted to Mr. CHABERT by him, was to be handed over to Maitre MOUIAL, notary, for the purchase of a property in the French zone of the Isle of Saint Martin; such proof would have discharged him from the burden of proving the due regularity of the sum's transfer. In support of his appeal, Mr. BACQUIÉ argues that the Tribunal reversed the burden of proof in that it was *810 Mr. CHABERT'S burden to establish the illicit nature of this transfer.
"It is obvious that, pursuant to the terms of section 1131 of the Civil Code, an obligation in an illicit cause cannot be enforced. It is also patent, as underscored by Mr. BACQUIÉ, that doctrine and case law provide that the burden of proof lies on `the summoned defendant, who must demur to the action on the grounds of an absence of cause or a legal fault rendering the action void.' ...
"In the case in point, there are no grounds allowing the Court to conclude, as concerns the agreement, the existence of any illicit cause binding the parties or to contradict the explanations and documentary evidence submitted by Mr. BACQUIÉ in this instance.
...
"In the case in point, it appears from the facts contained in the case file that the disputed sum, according to Mr. CHABERT'S statements before the trial judge, was stolen.... In any case, this cannot discharge the escrow agent unless he/she can demonstrate that all reasonable precautions were taken to avoid a theft.
"But no such proof was forthcoming, and the Court does take note of the fact that the money handed over to the escrow agent was placed in a suitcase which was supposed to travel in the airplane's cargo hold, thus totally unattended to. Consequently, in light of these explanations, Mr. BACQUIÉ remains legally entitled to recover from Mr. CHABERT full reimbursement of the sum of 1 500 000 francs which was turned over to the latter, with legal interest thereupon accruing as from the date of the service."
The decision closes with formal language providing for the recovery of the sums allowed.
Chabert apparently learned of the appellate court's decision from the attorney who had represented him in the French trial court. He thereupon filed an appeal to the French Supreme Court (Cour de Cassation). In order to appeal to that highest court, the appellant must first pay the money judgment. Chabert failed to do so, and in December 1990 the Supreme Court thereupon dismissed his appeal.
Bacquié filed an action in May 1992 in the circuit court in Palm Beach County seeking a Florida judgment on the French judgment. In his response to the Florida action, Chabert filed a motion to dismiss, arguing that the French judgment was not entitled to recognition by the Florida courts. The motion was predicated on two essential grounds. First, Chabert argued that Florida requires reciprocity with the rendering nation as a prerequisite to recognition, citing Warren v. Warren, 73 Fla. 764, 75 So. 35 (1917), and Ogden v. Ogden 159 Fla. 604, 33 So.2d 870 (1947), and that Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), holds that France does not recognize judgments of American courts. Second, Chabert argued that the judgment of the French court of appeal was a default judgment, which Florida courts will not recognize, citing Jackson v. Stelco Employees Credit Union Ltd., 203 So.2d 669 (Fla. 4th DCA 1967). Both parties then proceeded to file memoranda of law. The trial court apparently held a hearing and entered an order in February 1995 denying the motion.
Meanwhile, in October 1994, the Florida Uniform Out-of-country Foreign Money-Judgment Recognition Act [the Act] became effective.[7] The Act was apparently brought to the trial court's attention at the hearing on the motion to dismiss. After the court denied the motion, Chabert filed a Notice of Objections, all of which are grounded in the Act. He now stated 3 essential grounds for nonrecognition of the French judgment: (1) the French court of appeal lacked personal jurisdiction over Chabert because he did not receive notice of the appeal; (2) the judgment was obtained by fraud; and (3) the claim on which the judgment is based is repugnant to the public policy of Florida. After receiving further submissions from the parties, the trial court entered the order we review today.
*811 We first consider whether the Act may properly be applied to an action pending before it was enacted. The Act effectively replaces the common law principles of comity for recognizing foreign judgments, at least to the extent of any differences between the Act and the common law. Chabert argues that the Act is substantive in nature and therefore may not be retroactively applied. As the supreme court said in City of Orlando v. Desjardins, 493 So.2d 1027,1028 (Fla.1986), however:
"While the procedural/substantive analysis often sheds light on the propriety of retroactively applying a statute, Young v. Altenhaus, 472 So.2d 1152 (Fla.1985); State v. Lavazzoli, 434 So.2d 321 (Fla.1983), the dichotomy does not in every case answer the question. Florida's courts have embraced a third alternative. If a statute is found to be remedial in nature, it can and should be retroactively applied in order to serve its intended purposes. Village of El Portal v. City of Miami Shores, 362 So.2d 275 (Fla.1978); Grammer v. Roman, 174 So.2d 443 (Fla. 2d DCA 1965)."
In that case, the court held that a newly enacted exemption to the public records act, involving an attorney/client privilege for local governments, could be retroactively applied to litigation already pending. The court explained:
"The statutory exemption, according temporary protection from the disclosure of sensitive documents, is addressed to precisely the type of `[r]emedial rights [arising] for the purpose of protecting or enforcing substantive rights,' In re Florida Rules of Criminal Procedure, 272 So.2d 65, 65 (Fla.1972), which is allowed retroactive application. A contextual examination of the exemption leaves little doubt as to its salutary and protective purpose of mitigating the harsh provisions of the Florida Public Records Act as applied to public entities' litigation files in ongoing litigation."
493 So.2d at 1028.
If legislation so substantive as an attorney/client exemption from the Public Records Act can validly be applied to ongoing litigation, then we see little reason why legislation so obviously remedial as the Act in question could not be applied to Bacquié's pending lawsuit to recognize the French judgment. The common law procedure for recognition of a foreign money judgment was both cumbersome and uncertain. It was cumbersome because it required an entirely new action, with its own pleadings and evidence, simply to go after property of the judgment debtor within our jurisdiction. It was uncertain because the cases did not set out clearly what would doom a foreign judgment and what instead might merely be considered by the Florida court in deciding whether to recognize it. The Act certainly remedies both of these concerns and provides a speedier and more certain framework for recognition. Consequently, we feel comfortable in applying the rationale of City of Orlando v. Desjardins to this issue and allowing application of the Act to this case.
This leads us to Chabert's grounds for refusing to recognize the French judgment. The first ground is that the French court lacked personal jurisdiction over him. This ground is based on section 55.605(1)(b) of the Act, which provides that "[a] foreign judgment is not conclusive if ... the foreign court did not have personal jurisdiction over the defendant." Chabert premises the alleged lack of jurisdiction on improper or inadequate service of notice as to the filing of the appeal in the French court of appeal. He contends that the Hague Service Convention[8] required that the notice sent by Bacquié's French appellate attorney to Chabert to have an attorney enter an appearance in the French appeal be served with all the formality of service of initial process at the commencement of a lawsuit.
Preliminarily, we note that subsection (1) of section 55.605 of the Act is phrased in mandatory terms: if any of the grounds listed in subsection (1) are found to exist, then the foreign judgment is not conclusive, and a Florida court cannot recognize it. This contrasts with subsection (2) of section 55.605 which is phrased in permissive terms. *812 Hence, if Chabert is correct that the French court lacked personal jurisdiction over him under the Hague Service Convention, then under section 55.605(1)(b) we may not accord recognition to the French judgment in this case.
We also note, however, that section 55.606 of the Act further modifies the court's power to refuse recognition of a foreign judgment on the grounds of lack of jurisdiction. More specifically, among other things, it provides that "[t]he foreign judgment shall not be refused recognition for lack of personal jurisdiction if ... the defendant was served personally in the foreign state...." In the present case, it appears without contradiction that Chabert was personally served with initial process at the commencement of the action in the French trial court. As we read these statutory provisions, the trial court could not refuse recognition for lack of personal jurisdiction under sections 55.605 and 55.606 if the personal service effected at the beginning of the legal action in the French trial court satisfied all requirements of personal service.
Chabert argues that Article 15 of the Hague Service Convention required that he be personally served with notice of the French appellate proceedings.[9] But as Bacquié has shown, Article 1 of the Convention establishes the scope of its coverage as follows:
"The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."
In Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988), the Supreme Court construed Article 1 to "refer to service of process in the technical sense." 486 U.S. at 700, 108 S.Ct. at 2108. In that case, personal service of initial process in an Illinois state court proceeding on a German corporate defendant was never actually effected. Instead the German corporation was formally summoned by serving a corporate subsidiary doing business in the United States. The Supreme Court found such service in compliance with the Hague Convention because the forum state, Illinois, did not require personal service in Germany on the German corporate defendant.
The Supreme Court construed Article 1 of the Hague Service Convention to mean that the laws of the forum nation determine whether there is "occasion to transmit a judicial or extrajudicial document for service abroad." Bacquié argues that Article 1 applies only to service of initial process, not to later notices required to be given within the pending litigation. As he points out, Article 10(a) of the Convention states that:
"Provided that the State of destination does not object, the present Convention shall not interfere with ... the freedom to send judicial documents, by postal channels, directly to persons abroad."
Article 903 of French Civil Code requires the court clerk to serve each appellee by regular mail with a notice that an appearance by an attorney is necessary.
We agree with Bacquié that the notification to Chabert that it is necessary for him to retain an attorney in the French appellate proceeding does not come within the scope of Article 1 of the Hague Service Convention.[10] If the clerk's notice is returned by the post office, then the clerk sends the notice to the attorney for the appellant who then must send the appellee a citation warning that the appeal may be decided only on the submission by the appellant if the appellee does not respond through an attorney. We understand the clerk's notice and the appellant's citation not to be initial process but instead to be papers covered by Article 10(a) of the Hague Service Convention.
*813 To us, they mirror the Florida procedure of mailing a copy of a notice of appeal to all appellees, under which it is not necessary to serve appellees with the summons or initial process necessary at the commencement of an action in the trial court. The Florida appellate court's personal jurisdiction over the appellee is but a continuation of the trial court's personal jurisdiction. In fact, the cases in this state have clearly held that the failure to serve a notice of appeal is not jurisdictional. In State ex rel. Dedmon v. Carroll, 151 So.2d 5 (Fla.1963), the court explained:
"[The rule] requires that a copy of the notice of appeal be served on the opposing parties.... However, we know of no provision of the Rules or of any decisions which hold the alleged lack of service to be jurisdictional. While lack of service, on proper showing, may subject the offender to some penalty, or even dismissal, under [rule] 3.17, it is not a ground for prohibition. [Rule] 3.2(d) clearly provides that jurisdiction is accomplished by the filing of the notice of appeal in the trial court and payment of the required fee."
151 So.2d at 7. Later, in City of Gainesville v. Thomas, 229 So.2d 833 (Fla.1969), the court slightly amended the holding, saying:
"While timely filing of notice of appeal is jurisdictional, the timely deposit of the required filing fee is not. We do not mean to imply by this that the deposit of the fee is not mandatory for we are of the opinion that it is. However, in circumstances where the clerk of the appropriate court is satisfied to accept a notice of appeal without simultaneously collecting the filing fee, then the subsequent deposit of the fee after the running of the appeal time limit will not affect the jurisdiction of the appellate court."
229 So.2d at 833. Still later, the court made another slight amendment to its holding, saying as follows:
"While timely filing of notice of appeal is jurisdictional, the timely deposit of the required filing fee (or adjudication of insolvency) is not. We do not mean to imply by this that the deposit of the fee (or adjudication of insolvency) is not mandatory for we are of the opinion that it is. The subsequent deposit of the fee after the running of the appeal time limit will not affect the jurisdiction of the appellate court."
Williams v. State, 324 So.2d 74, 77 (Fla. 1975). Finally, County Sanitation v. Ross, 389 So.2d 1247 (Fla. 1st DCA 1980), is especially apposite. There the district concluded that the failure to name one of multiple parties as an appellee and serve that party with a copy of the notice of appeal was not jurisdictional.
Consequently, under our procedure, the only jurisdictional requirement for taking an appeal is the timely filing of the proper notice. Service of the notice on the appellee is not jurisdictional and need not be effected with all the formalities of service of initial process. Clearly, therefore, it is not necessary in Florida that the notice of appeal be personally served on the opposing party. We are thus hardly in a position to hold the French procedure inadequate when it does functionally the same as the Florida procedure. Treating a timely filed appeal to the French cour d'appel as a mere continuation of the personal jurisdiction of the trial court is entirely cognizant with our own practice.[11]
Equally important, Chabert failed in the Florida trial court to establish that French law required service abroad of initial process for the French appellate proceeding. In the first place, the judgment of the French court of appeal recites that service of the appeal was effected "au parquet" on March 23, 1989. That is the date when Bacquié gave notification of the necessity to retain an attorney on Chabert by delivering the citation to the public prosecutor in Guadeloupe. Hence, it appears that French law *814 did not require service of the citation abroad, as the Hague Service Convention so clearly states, to come within its scope of Article 1.
Additionally, as we have previously noted, Chabert failed to make clear in the lower court just where and when he established domicile. The record shows by his own affidavit that he maintained a residence in the French zone of St. Martin from 1977 to sometime in 1987. During that time he also maintained an American residence. The record does not establish where his domicile was. In any case, if he had a residence in St. Martin, and especially if it was his domicile, we understand that French law would not require service on him abroad. Thus, the key ingredient for coverage by Articles 1 and 15 of the Hague Service Conventioni.e., a necessity by the French forum for service of initial process outside of the French jurisdictionhas not been established by Chabert. Accordingly, the trial judge below correctly concluded that Chabert had failed to establish grounds for nonrecognition of the French judgment under section 55.605(1)(b).
The second ground asserted by Chabert for refusing recognition is his argument that Florida requires reciprocity by the forum state to recognize a judgment of a foreign nation and that France does not accord recognition for American judgments. The argument that reciprocity is required is based on Warren v. Warren, 73 Fla. 764, 75 So. 35 (1917), and Ogden v. Ogden 159 Fla. 604, 33 So.2d 870 (1947). The contention that France refuses reciprocity for American judgments is bottomed on the 1895 decision of the United States Supreme Court in Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Both Warren and Ogden were decided under the common law principle of comity, and both decisions predate the adoption of the Act we construe today. Thus, we doubt that these cases have the kind of lingering effect that Chabert asserts. Even if we were to agree that initially they represented the kind of categorical holding that Chabert argues they do, we would still have to reëxamine them in light of the new statute codifying the principles for recognition of foreign money judgments.
We therefore turn first to the text of section 55.605(2)(g), which states that:
"A foreign judgment need not be recognized if ... the foreign jurisdiction where judgment was rendered would not give recognition to a similar judgment rendered in this state."
This is obviously merely a permissive ground for nonrecognition. Unlike the grounds in subsection (1)(b) of section 55.605, this is not a mandatory basis for refusing to recognize a foreign judgment. Because a lack of reciprocity is merely one of several grounds on which a trial judge may, but is not required to, refuse recognition, we conclude that a trial judge's decision rejecting a lack of reciprocity should ordinarily be reviewed by the abuse of discretion standard. We find no abuse of discretion in this record because we are satisfied that France now recognizes American judgments similar to the kind involved here.
Bacquié adduced evidenceunrebutted by Chabert except by citing Hilton v. Guyot that since the 1964 decision of the French Supreme Court in the Munzer case, judgments against foreign nationals by non-French courts have been routinely recognized in France. The French policy is different, however, as regards judgments by non-French courts against French nationals. France's current policy of nonrecognition is limited to non-French judgments against its own citizens. There is evidence in the record that Chabert is a French citizen.[12] And so the kind of judgment sought to be recognized in this case was a French judgment against a French national.
Section 55.605(2)(g) insists that the requirement of reciprocity be based on a "similar judgment rendered in this state." The "similar judgment," or reciprocal, of the French judgment in this case would be a Florida judgment against an American citizen sought to be enforced in a French court. Again, the evidence shows that France's refusal *815 to recognize American judgments applies only to foreign judgments against French nationals. Chabert has thus failed to carry his burden of establishing that today[13] a French court would refuse to recognize an American judgment against a non-French party sought to be enforced in a French court. Therefore the trial court did not abuse its discretion in its implicit finding that the lack of reciprocity was not shown.
We need only briefly address Chabert's remaining contentions. His failure to receive actual notice of the pendency of the French appeal is but a factual matter for the trial court to weigh and consider in permissively deciding whether to recognize the judgment. See § 55.605(2)(a), Fla.Stat. (1995) ("A foreign judgment need not be recognized if ... the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him ... to defend."). Here, the trial court decided that the failure to receive actual notice was attributable to Chabert's failure to keep the French court apprised of his current residence address. As there is competent evidence in the record supporting that finding, we see no error on that ground. We also affirm the trial court's rejection of the contention that the French judgment was obtained by fraud. See § 55.605(2)(b), Fla. Stat. (1995) ("A foreign judgment need not be recognized if ... the judgment was obtained by fraud."). There is no evidence in the record to support this contention.
Nor is the claim on which the French judgment was based repugnant to Florida law. The French court of appeal rejected the contention that the transaction violated French currency laws. Instead it appears to us that the transaction was, as the French court of appeal held, an ordinary escrow transaction in which the escrow agent failed to deliver the entrusted property to its rightful owner. Even assuming that we could entertain this contention in the face of the French judgment holding to the contrary, Chabert has failed to adduce anything to support this argument except his own assertion.
Finally we reject the contention that we should refuse recognition because the judgment of the French court of appeal was a default judgment. There are no grounds under section 55.605 of the Act requiring a Florida court to refuse recognition merely because the foreign judgment arose from a default by the defendant.[14] In our opinion, with the enactment of the Florida Uniform Out-of-Country Foreign Money Judgment Act, Jackson v. Stelco Employees Credit Union, 203 So.2d 669 (Fla. 4th DCA 1967), is no longer good law.
AFFIRMED.
STONE and SHAHOOD, JJ., concur.
NOTES
[1] §§ 55.601-55.607, Fla.Stat. (1995).
[2] The papers in the record do not spell Bacquié's surname consistently. His French lawyer, however, spells it with an accent acute over the final vowel. We use the diacritic because we assume that his French lawyer is more familiar with the correct spelling of his client's surname.
[3] Guadeloupe is a Départment of France, roughly equivalent to one of our 50 states.
[4] Art. 908, Revised Code of Civil Procedure (Nouveau Code de Procédure Civile) [hereafter "Rev.Code Civ.P."]. The English translation of this provision is:

"The court clerk shall serve forthwith, by regular mail, each appellee with a copy of the Declaration of Appeal, with notice that an appearance by attorney is necessary. In the event that this copy is returned to him by the Post Office, the clerk shall forward it forthwith to the attorney for appellant, who shall then proceed as specified in Article 908."
[5] Art. 908, Rev.Code Civ.P. The English translation of this provision is:

"When a party, upon service of the latter mailed by the office of the clerk does not appear by attorney, the appellant shall cause to be served upon him a citation with a copy of the Declaration of Appeal. The citation shall indicate that in the event the defendant fails to appear by attorney within fifteen days, a judgment may be rendered against him based exclusively on the elements submitted by his adversary."
[6] Article 686 then provides that a court official must send a certified copy of the documents to the recipient, in this instance Chabert, with a registered letter on the same day they are received by the Public Prosecutor.
[7] See Ch. 94-239, Laws of Fla.
[8] Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 [1969] 20 U.S.T. 361, T.I.A.S. No. 6638.
[9] Article 15 of the Hague Service Convention is directed to the trial court in a proceeding where Article 1 of the Convention requires that initial process be served abroad. It directs the trial judge not to enter judgment against a defendant to be served abroad until it is shown that service was effected in accordance with the Convention in time for the defendant to respond.
[10] Accordingly, we have no occasion to consider whether Article 15 of the Convention was satisfied.
[11] For this reason, we reject Chabert's contention that the French judgment was entered under procedures incompatible with due process of law. See § 55.605(1)(a) Fla.Stat. (1995) ("A foreign judgment is not conclusive if ... the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law.").
[12] At least one French law expert so stated in the record below and Chabert does not contradict the assertion.
[13] We also agree with Bacquié's French law expert that Hilton v. Guyot is of doubtful value today on the issue of French reciprocity. The decision was based in part on 17th century French monarchial law, which was of course before the French Revolution and even before the creation of the current French republic. Moreover, as we read the Florida Foreign Judgement Act we construe today, the judgment debtor or defendant has the burden of proving the lack of reciprocity by competent evidence. Whatever may have been the facts on reciprocity in 1895 when Hilton was decided, they are decidedly different today.
[14] Our holding is of course limited to an ordinary default judgment. We express no opinion as to recognition of foreign cognovit judgments, i.e. default judgments arising by confession of judgment or some similar procedure.