700 So.2d 429 (1997)
Lance BLANKENSHIP, Paula A. Blankenship and Interim Healthcare of Upper Ohio Valley, Inc., Appellants,
v.
INTERIM SERVICES, INC., Appellee.
No. 97-582.
District Court of Appeal of Florida, Third District.
October 8, 1997.
*430 Thomson, Muraro, Razook & Hart and Timothy J. Norris, Miami, for Appellants.
Swidler & Berlin and David J. Butler and Elaine A. Panagakos; Steel, Hector & Davis and Edwin G. Torres, Miami, for Appellee.
Before SCHWARTZ, C.J., and GODERICH and SORONDO, JJ.
SCHWARTZ, Chief Judge.
Lance and Paula Blankenship, who are citizens of Ohio, and their West Virginia corporation, Interim Healthcare of Upper Ohio Valley, Inc., appeal under Florida Rule of Appellate Procedure 9.130(a)(3)(C)(i) from an order denying their motion to dismiss an action against them for alleged lack of personal jurisdiction. Upon the finding that their contacts with Florida were constitutionally insufficient to justify the substituted service effected against them, we reverse the order on review.
In 1993, after responding to an advertisement placed in a West Virginia newspaper by the appellee Interim Services, Inc., the Blankenships came to Florida to meet with representatives of that company. Shortly thereafter they and their corporation entered into a group of license, franchise, and loan agreements with Interim Services, Inc., under which they were granted rights to provide medical services on both the West Virginia and Ohio sides of the upper Ohio River near Wheeling. Under the agreements, in which the Florida corporation served essentially as the financier and supervisor of the business aspects of the enterprises, Interim Services paid for the services rendered the West Virginia-Ohio operation and for its payroll from offices in Fort Lauderdale. When the Blankenships and the corporation allegedly defaulted on various obligations arising under the three agreements, Interim Services brought this action against them in the Dade County Circuit Court. Substituted service was effected through the secretary of state purportedly under section 48.193(1)(g), Florida Statutes (1995), which provides for personal jurisdiction over non-residents who
[breach] a contract in this state by failing to perform acts required by the contract to be performed in this state.
Specifically, it was alleged that the defendants had failed to pay sums due in Florida to Interim Services. In response, the defendants moved, among other things, to dismiss on the ground that the attempt to obtain Florida jurisdiction over them was contrary to the requirements of due process. Although the motion was denied, we hold that it should have been granted.
In approaching the merits of the controversy, we need not dwell upon or even determine the much mooted issue of whether the agreements in question or the practice of actual payments followed by the parties indeed *431 indicate that the payments were to be made, and thus that the contract was breached, in Florida, as Interim insists, or, as the appellants contend, in West Virginia or Illinois.[1] Compare Vacation Ventures, Inc. v. Holiday Promotions, Inc., 687 So.2d 286 (Fla. 5th DCA 1997); Laser Elect. Contractors, Inc. v. C.E.S. Indust., Inc., 573 So.2d 1081 (Fla. 4th DCA 1991); Unger v. Publisher Entry Serv., Inc., 513 So.2d 674 (Fla. 5th DCA 1987), review denied, 520 So.2d 586 (Fla.1988); Kane v. American Bank of Merritt Island, 449 So.2d 974 (Fla. 5th DCA 1984). This is because compliance with section 48.193(1)(g)which we may assume arguendois insufficient, without substantially more, to establish the minimum contacts with the forum state also required, under the due process clause, to support service on a non-resident. Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989); Roldos v. Americargo Lines, Inc., 698 So.2d 1368 (Fla. 3d DCA 1997); Marsh Supermarkets, Inc. v. Queen's Flowers Corp., 696 So.2d 1207 (Fla. 3d DCA 1997); O'Brien Glass Co. v. Miami Wall Sys., Inc., 645 So.2d 142 (Fla. 3d DCA 1994); Pres-Kap, Inc. v. System One, Direct Access, Inc., 636 So.2d 1351 (Fla. 3d DCA 1994), review denied, 645 So.2d 455 (Fla. 1994); Alan Richard Textiles, Ltd. v. Vertilux, Inc., 627 So.2d 529 (Fla. 3d DCA 1993); Payless Drug Stores Northwest, Inc. v. Innovative Clothing Exchange, Inc., 615 So.2d 249 (Fla. 3d DCA 1993); Vaughn v. AAA Employment, Inc., 511 So.2d 1045 (Fla. 2d DCA 1987).
The appellee argues that the "substantially more" is found in Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) and such of its offspring as Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623 (11th Cir.1996). In Burger King, the Supreme Court upheld the validity of Florida process in an action for breach of obligations incurred in the operation of a Burger King franchise in Michigan. We conclude, however, that the decisive differences between the facts in Burger King and this one require a different result as well. Considered in what is more or less an ascending order of importance, these distinctions include:
(1). The degree of control exercised by Burger King in Florida over the smallest detail of the franchisee's operations, Burger King, 471 U.S. at 464-466, 105 S.Ct. at 2178, including the size and location of the pickle slice in the Whopper, far exceeded those of the plaintiff over the defendants' operations in the Ohio Valley. In essence, the Blankenships and the West Virginia corporation were responsible, in their discretion, for the furnishing of medical services for the residents of their particular area; Interim Services itself was almost exclusively concerned with the financial aspects of the operation, to the end only that it would be paid. The overriding concern of a national entity like Burger King for the quality of the services rendered by any of its outlets has no counterpart in the present situation.
(2). Unlike the Burger King franchisee Rudzewicz who, with his partner, formulated a desire to run a Burger King which could be satisfied only if they came to the franchisor at its home in Florida, the present arrangements were initiated by Interim Services which went to West Virginia to solicit the defendants. As the Burger King case itself emphasizes, the fact that a defendant has or has not "purposefully ... directed his activities at forum residents" is of great significance in determining the essential fairness of subjecting him to that jurisdiction. Burger King, 471 U.S. at 477, 105 S.Ct. at 2184-85.
(3). Unlike the Burger King facts, in which the franchise documents provided that all disputes would be governed by Florida law, the pertinent contracts here stated directly to the contrary, that West Virginia law *432 was to be applied. Thus, far from indicating that
[a]s Judge Johnson argued in his dissent below, Rudzewicz "purposely availed himself of the benefits and protections of Florida's laws" by entering into contracts expressly providing that those laws would govern franchise disputes
Burger King, 471 U.S. at 482, 105 S.Ct. at 2187, the defendants contrarily showed their desire to be subject only to the protection of their own state, and not Florida.[2]
In sum, this case is governed by the long list of Florida decisions which hold that a foreign buyer of products from a Florida seller does not submit himself to Florida jurisdiction merely by making those purchases and failing to pay for them here. Roldos, 698 So.2d at 1369; Marsh Supermarkets, 696 So.2d at 1207; O'Brien Glass Co., 645 So.2d at 142; Pres-Kap, 636 So.2d at 1351; Alan Richard Textiles, 627 So.2d at 529; Payless Drug Stores, 615 So.2d at 249. That this case involves furnishing intangibles and services rather than selling products, as in most of these decisions, makes no difference in the result. Vaughn v. AAA Employment, Inc., 511 So.2d at 1045, squarely so holds on facts which are very similar to, although even less compelling (because the contract provided for the applicability of Florida law) than these. Reversal may be properly based upon Vaughn alone.
Reversed.
NOTES
[1] The appellee claims that the franchise agreement expressly required royalties to be paid at its office in Fort Lauderdale, and that money owed under the license agreement was implicitly required to be paid at its Fort Lauderdale office pursuant to the rule that the law presumes a debt is to be paid at the creditor's place of business in the absence of an express designation otherwise. See Kane v. American Bank of Merritt Island, 449 So.2d 974 (Fla. 5th DCA 1984). The appellants contend, among other things, that the appellee had established the place of payment by requesting and accepting payments under both the franchise and loan agreements through the First National Bank of Chicago.
[2] The appellee argues that this case is stronger than Burger King in that, unlike Rudzewicz, who never came to Florida (although his partner did), the Blankenships did visit here before agreeing to the contracts in question. Even putting aside the fact that the visits occurred only at Interim's expense, the Blankenships' trips to this state are not legally significant. Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110 (11th Cir.1990), cert. denied, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 447 (1991); Roldos, 698 So.2d at 1369; see also Burger King, 471 U.S. at 479 n. 22, 105 S.Ct. at 2186 n. 22.