ROWE, J.
 

 EOS Transport Inc. (EOS) appeals the Escambia County Circuit Court’s July 22, 2009, order dismissing its attempt to seek recognition of an out-of-country judgment against Agri-Source Fuels, L.L.C. (Agri-Source), under the Florida Uniform Out-of-Country Foreign Money-Judgment Recognition Act (the Act). We affirm the trial court’s order and hold that the default judgment rendered against Agri-Source in Canada was unenforceable because the Supreme Court of British Columbia lacked personal jurisdiction over Agri-Source.
 

 FACTS
 

 EOS is a Canadian corporation which operates out of the province of British Columbia. Agri-Source is a Florida limited liability company with its principal place of business in Pensacola, Florida; it only conducts business within the State of Florida and has never conducted business in Canada. Agri-Source purchased multiple 13,000-gallon steel tanks from a California company. The tanks were located in Canada. The seller referred Agri-Source to EOS because they were a transporter of tanks. Agri-Source contacted EOS, and the companies entered into an oral agreement for EOS to transport the tanks from their location in Canada to Florida. The companies communicated approximately twenty times regarding the contract. In performing its duties under the contract, EOS addressed customs issues, but it contracted with two other companies for the actual shipment of the tanks. EOS invoiced Agri-Source from its home office in Canada and payment was due in Canada.
 

 Ultimately a dispute arose regarding payment for several of the shipments made under the contract, and EOS filed suit for breach of contract in the Supreme Court of British Columbia. A default judgment was entered after Agri-Source did not respond. EOS then sought recognition of the foreign judgment in Florida. Agri-Source filed an objection to the recognition of the judgment on several grounds, including an assertion that the Canadian court lacked personal jurisdiction over Agri-Source. After a hearing, the Escambia County Circuit Court held that the judgment was unenforceable in Florida because the Canadian court lacked personal jurisdiction over Agri-Source.
 

 ANALYSIS
 

 The recognition of out-of-country foreign money judgments in Florida is
 
 *352
 
 governed by the Uniform Out-of-Country Foreign Money-Judgment Recognition Act (the Act).
 
 See
 
 §§ 55.601-.607, Fla. Stat. (2009). The Act was adopted “to ensure the recognition abroad of judgments rendered in Florida.”
 
 Nadd v. Le Credit Lyonnais, S.A.,
 
 804 So.2d 1226, 1228 (Fla.2001);
 
 accord Frymer v. Brettschneider,
 
 696 So.2d 1266, 1267 (Fla. 4th DCA 1997);
 
 Osorio v. Dole Food Co.,
 
 665 F.Supp.2d 1307, 1322-23 (S.D.Fla.2009). When a Florida court grants recognition under the Act to a foreign judgment, the judgment is “immediately enforceable as though it were a final judgment of a Florida court.”
 
 Nadd,
 
 804 So.2d at 1233 (quoting
 
 Chabert v. Bacquie,
 
 694 So.2d 805, 808 (Fla. 4th DCA 1997)). “It thus becomes identical in effect with a judgment entered by a Florida court.”
 
 Id.
 
 (quoting
 
 Chabert,
 
 694 So.2d at 808).
 

 The Act “applies to any out-of-country foreign judgment that is final and conclusive and enforceable where rendered.” § 55.603, Fla. Stat. A judgment is conclusive between the parties to the extent that it grants or denies a sum of money.
 
 See
 
 §§ 55.603-604, Fla. Stat. Although such judgments are prima facie enforceable, the Act provides eleven grounds for which a foreign judgment may be denied recognition.
 
 See
 
 § 55.604-.605, Fla. Stat.;
 
 Osorio,
 
 665 F.Supp.2d at 1323. Here, Agri-Source alleges that the Canadian judgment should not be recognized due to a lack of personal jurisdiction. This is a mandatory ground for non-recognition under the Act; as such, the enforcing court must find that the foreign judgment should not be recognized if the foreign court lacked personal jurisdiction over the defendant. § 55.605(l)(b), Fla. Stat.;
 
 see Chabert,
 
 694 So.2d at 811-12.
 

 As a preliminary matter, this court must determine the proper law to be applied in analyzing personal jurisdiction under the Act. Although the Act provides six factual scenarios where a foreign judgment “shall not be refused recognition for lack of personal jurisdiction,” the Act does not specify which country’s law is to be applied when considering whether the exercise of personal jurisdiction is proper in response to an objection to recognition.
 
 See
 
 §§ 55.605-.606, Fla. Stat. No Florida state court has squarely addressed the issue.
 
 See Osorio v. Dole Food Co.,
 
 No. 07-22693-CIV, 2009 WL 48189, at *4 (S.D.Fla. Jan. 5, 2009);
 
 cf. Chabert,
 
 694 So.2d at 812 (indicating that if the French court lacked personal jurisdiction over Chabert under the Hague Service Convention, then recognition would not be proper; nevertheless, finding the exercise of personal jurisdiction proper because the Act proscribed a finding of personal jurisdiction given the factual scenario).
 

 In many jurisdictions that have enacted similar recognition acts, courts have engaged in a two-part analysis: first, applying the foreign law to determine whether the foreign court had jurisdiction; and second, applying a U.S. Constitutional Due Process “minimum contacts” analysis and ensuring that the exercise of jurisdiction complies with the “traditional notions of fair play and substantial justice.”
 
 See, e.g., Monks Own, Ltd. v. Monastery of Christ in the Desert,
 
 142 N.M. 549, 168 P.3d 121, 124-27 (2007). However, a few courts have applied only the law of the recognizing forum.
 
 Evans Cabinet Corp. v. Kitchen Intern., Inc.,
 
 593 F.3d 135, 142 n. 10 (1st Cir.2010) (recognizing that some courts have applied only the law of the recognizing forum in determining personal jurisdiction).
 

 We adopt the analytical approach applying the two-part test and hold that in assessing whether the exercise of personal jurisdiction is proper under the Act, the trial court must determine whether the
 
 *353
 
 exercise is proper under both the law of the foreign jurisdiction and under U.S. Constitutional Due Process requirements. This approach allows the defendant to challenge recognition on grounds that the foreign forum lacked personal jurisdiction over the defendant, similar" to the approach taken by Florida courts when enforcing a domestic foreign judgment.
 
 See In re Estate of O’Keefe,
 
 838 So.2d 157, 160 (Fla. 2d DCA 2002). The second step ensures that the finding of jurisdiction comports with U.S. Constitutional Due Process requirements.
 

 Here, once EOS presented the Escam-bia County Circuit Court with evidence that the foreign default judgment was final and conclusive, the burden shifted to Agri-Source to prove that the Canadian court lacked personal jurisdiction.
 
 See Kramer v. von Mitschke-Collande,
 
 5 So.3d 689, 690-91 (Fla. 3d DCA 2008);
 
 Osorio,
 
 665 F.Supp.2d at 1324. However, Agri-Source did not argue before the circuit court— either by written motion or by way of counsel at the recognition hearing — that jurisdiction did not exist under the laws of Canada. Therefore, that issue is not properly before this court. Furthermore, given our finding that the exercise of personal jurisdiction in this case did not comport with U.S. Constitutional Due Process requirements, we need not consider whether the exercise of personal jurisdiction was proper under Canadian law. Accordingly, we address only whether Agri-Source had sufficient contacts with Canada to satisfy U.S. Constitutional Due Process requirements.
 

 “The Due Process Clause protects an individual’s liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful ‘contacts, ties, or relations.’”
 
 Burger King Corp. v. Rudzewicz,
 
 471 U.S. 462, 471-72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting
 
 International Shoe Co. v. Washington,
 
 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The U.S. Constitutional Due Process requirements consists of two prongs: “(1) whether the acts of the nonresident defendant give rise to sufficient ‘minimum contacts’ with the forum state such that (2) maintaining a suit there ‘does not offend traditional notions of fair play and substantial justice.’ ”
 
 Ga. Insurers Insolvency Pool v. Brewer,
 
 602 So.2d 1264, 1268 (Fla.1992) (quoting
 
 International Shoe,
 
 326 U.S. at 316, 66 S.Ct. 154).
 

 As noted by the supreme court in
 
 Venetian Salami Co. v. Parthenais,
 
 554 So.2d 499, 501 (Fla.1989), each case must be analyzed on its own facts:
 

 The Court long ago rejected the notion that personal jurisdiction might turn on “mechanical” tests or on “conceptualistic ... theories of the place of contracting or of performance.” Instead, we have emphasized the need for a “highly realistic” approach that recognizes that a “contract” is “ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.” It is these facts-prior negotiations and contemplated future consequences, along with terms of the contract and the parties’ actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.
 

 (Citations omitted) (quoting
 
 Burger King,
 
 471 U.S. at 478-79, 105 S.Ct. 2174).
 

 “Factors that go into determining whether sufficient minimum contacts exist include the foreseeability that the defendant’s conduct will result in suit in the forum state and the defendant’s purposeful availment of the forum’s privileges and protections.”
 
 Ga. Insurers,
 
 602 So.2d
 
 *354
 
 at 1268 (citing
 
 Burger King,
 
 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528). “[T]he foreseeability that is critical to due process analysis is ... that the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.”
 
 World-Wide Volkswagen Corp. v. Woodson,
 
 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Fourth District has noted that this is the “single most important factor to consider” and that it should be viewed from the defendant’s perspective.
 
 Silver v. Levinson,
 
 648 So.2d 240, 242-43 (Fla. 4th DCA 1994);
 
 see also Lacy v. Force v. Corp.,
 
 408 So.2d 1050, 1054 (Fla. 1st DCA 1981).
 

 “[T]he fact that a defendant has or has not ‘purposefully ... directed his activities at forum residents’ is of great significance in determining the essential fairness of subjecting him to that jurisdiction.”
 
 Blankenship v. Interim Servs., Inc.,
 
 700 So.2d 429, 431 (Fla. 3d DCA 1997) (quoting
 
 Burger King,
 
 471 U.S. at 477, 105 S.Ct. 2174). The “ ‘purposeful availment’ requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of ‘random,’ ‘fortuitous,’ or ‘attenuated’ contacts.... ”
 
 Burger King,
 
 471 U.S. at 475, 105 S.Ct. 2174.
 

 Florida courts have consistently held that an out-of-state defendant’s purchase from a forum-state entity and the subsequent failure to pay alone are not sufficient to establish minimum contacts with the forum state to satisfy due process.
 
 See, e.g., Marsh Supermarkets, Inc., v. Queen’s Flowers Corp.,
 
 696 So.2d 1207 (Fla. 3d DCA 1997);
 
 Bruzzone Roldos v. Americargo Lines, Inc.,
 
 698 So.2d 1368 (Fla. 3d DCA 1997);
 
 Aluminator Trailers, L.L.C. v. Loadmaster Aluminum Boat Trailers, Inc.,
 
 832 So.2d 822 (Fla. 2d DCA 2002). In addition, the “due process requirement of minimum contacts is not satisfied by a showing that a party has entered into a contract with a non-resident.”
 
 Bohlander v. Robert Dean Assocs. Yacht Brokerage, Inc.,
 
 920 So.2d 1226, 1228 (Fla. 3d DCA 2006) (citing
 
 Venetian Salami Co. v. Parthenais,
 
 554 So.2d 499, 502 (Fla.1989)). However, the exercise of jurisdiction may be proper where an out-of-state defendant enters into a contract with a forum-state party “for substantial services to be performed in Florida; in that situation, the defendant has purposely availed himself of the privilege of conducting activities in Florida.”
 
 Bohlander,
 
 920 So.2d at 1228;
 
 accord Aspsoft, Inc. v. WebClay,
 
 983 So.2d 761, 763-64, 767 (Fla. 5th DCA 2008).
 

 Here, Agri-Source initiated contact with EOS for EOS to transport goods from Canada to Florida. Payment was to occur in Canada and ultimately EOS alleged that Agri-Source failed to make all payments due under the contract. Aside from the shipments from Canada and the payments in Canada, no other substantial services in performance of the contract occurred in Canada. Given the facts of this case, Agri-Source did not purposely avail itself of the privilege of conducting activities in Canada. Accordingly, Agri-Source would not have reasonably anticipated being haled into Canada based upon such random, fortuitous, and attenuated contacts. We, therefore, find that Agri-Source did not have sufficient minimum contacts with the Canadian forum to satisfy U.S. Constitutional Due Process requirements.
 

 Application of the second prong of a U.S. Constitutional Due Process analysis does not warrant a different result. While consideration of “fair play and substantial justice” may “serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than
 
 *355
 
 would otherwise be required,”
 
 Madara v. Hall,
 
 916 F.2d 1510, 1517 (11th Cir.1990), they do not do so here. Accordingly, we affirm the order of the Escambia County Circuit Court finding that the Canadian Court lacked personal jurisdiction over Agri-Source.
 

 AFFIRMED.
 

 VAN NORTWICK and LEWIS, JJ., concur.