# Third District Court of Appeal

## State of Florida

Opinion filed July 10, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1618
Lower Tribunal No. 20-4708
_____

**F.V. de Araujo S.A. Madeiras,
Agricultora, Industria e Comercio,**
Appellant,

vs.

**Dantzler Lumber & Export Co.,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Pedro P. Echarte, Jr., Judge.

Bushell Law, P.A., and Daniel A. Bushell (Ft. Lauderdale); Barakat + Bossa, PLLC, and Giacomo Bossa, for appellant.

Wicker Smith O'Hara McCoy & Ford, P.A., and Jordan S. Cohen (Ft. Lauderdale) and Ethan A. Arthur (Tampa), for appellee.


Before SCALES, LINDSEY, and MILLER, JJ.

LINDSEY, J.

Appellant F.V. de Araujo S.A. Madeiras, Agricultora, Industria, e Comercio appeals from an Order of Dismissal with Prejudice, which dismissed Araujo's action under Florida's Uniform Out-of-Country Foreign Money-Judgment Recognition Act, §§ 55.601-07, Florida Statutes (2023) (the "Act"). Because the alleged foreign judgment Araujo seeks to enforce is not an out-of-country foreign final judgment within the meaning of the Act nor is it subject to recognition and enforcement under common law comity principles, we affirm.

## I.    BACKGROUND

This case stems from a 2001 maritime shipping dispute that arose when a Danish vessel failed to deliver a shipment of lumber that Appellee Dantzler Lumber & Export, Co., a Florida-based buyer, ordered from Araujo, a Brazil-based seller. In December 2001, Dantzler and Araujo brought a joint action in Brazil against the vessel's owner. A Brazilian court ordered the owner to issue a clean bill of landing, but the order was ignored. This resulted in a drawn-out dispute between Araujo and Dantzler.

In December 2003, Araujo sued Dantzler in Brazil seeking payment for the lumber.[1] Dantzler failed to timely oppose the action, so it was converted into a Brazilian enforcement proceeding. Dantzler then challenged the

---

[1] Araujo alleged it could recover from Dantzler because the lumber was shipped "Free on Board" export, so Dantzler, as the buyer, assumed the risk of loss once the goods were loaded onto the ship.

validity of service arguing that the wrong person was served. In response, Araujo requested that Dantzler be held liable for abuse of process. In September 2005, the Brazilian court entered an order finding that Dantzler had engaged in abuse of process, and it imposed a penalty equal to 2% of the value of the case. The order was unanimously affirmed by a Brazilian appellate court. Araujo alleges it spent years trying to seize Dantzler's assets in Brazil, which was unsuccessful.

In February 2020, Araujo initiated proceedings below to recognize a foreign judgment pursuant to the Act. Araujo initially sought recognition and enforcement by recording six documents, including various Brazilian court documents (translated into English). In response, Dantzler filed a Notice of Objection arguing, inter alia, that Araujo failed to record a final judgment as required by the Act. See § 55.603, Fla. Stat. (2023) ("This act applies to any out-of-country foreign judgment that is final and conclusive and enforceable where rendered, even though an appeal therefrom is pending or is subject to appeal.").

Araujo acknowledged that it did not attach the correct documents, and it filed a motion to amend, attaching several additional documents. Dantzler moved for judgment on the pleadings arguing that Araujo had still failed to record a final foreign judgment. Following a hearing, the trial court denied Dantzler's motion, concluding that the motion was not a proper procedural

3

vehicle because neither party had filed pleadings in the form of a complaint or answer.

To address the trial court's procedural concerns, Araujo filed a complaint. The operative Complaint contains two counts: (I) recognition under the Act and (II) recognition under the common law of comity. The Complaint attaches a one-page May 2004 Order from Brazil, which provides as follows:

> This is a Monitory Action and, once the complaint was received, it was determined that the defendant should be notified to pay off or file an embargo,[2] under penalty of turning the claimed property into a judicial executive title with the continuance of this Executive Action (article 1102, CCP).
>
> The defendant was notified, letting the time limit elapse without any reply.
>
> Therefore, based on article 1102 of the Code of Civil Procedure, I turn this Monitory Action into an Enforcement Action, consequently the Registry Office is to rectify the records and official notification.
>
> The Debtor is to be notified to, within 24 hours, pay off or provide property as a pledge, after recognition of the communication.
>
> Fees 10%.

The Complaint also attaches an "Abstract of Record," prepared by the Brazilian Court Office Head in September 2019, over 15 years after the May

---

[2] According to the Complaint, embargos are defenses.

4

2004 Order. According to this document, the "judgment debt" as of September 2019 was $2,591,721.68 Brazilian Reals ("BRL").

In its Complaint, Araujo attempts to explain how the May 2004 Order is a final order. According to the Complaint, Araujo sought to collect an unsecured debt in the amount of USD $103,654.76 from Dantzler through a summary civil proceeding in Brazil known as ação monitória. Dantzler then had the option of either filing defenses or paying the amount due. Dantzler failed to answer, so the Brazilian court issued the May 2004 Order converting the lawsuit from an ação monitória into an enforcement proceeding. According to Araujo, this Order is the equivalent of a final default judgment, though this is not clear from the Order itself.

Dantzler filed a motion to dismiss arguing that the May 2004 Order is not a foreign final judgment for the purposes of the Act because it does not award a specific sum of money. Dantzler also argued that Araujo's alternative theory of recovery based on common law comity should be dismissed because the Act has replaced comity.

Following a hearing, the trial court agreed with Dantzler and dismissed Araujo's action with prejudice. Araujo timely appealed.

## II. ANALYSIS

We review de novo the trial court's interpretation of the Act and its legal determination that the May 2004 Order is not a foreign final judgment for the

5

purposes of the Act. See, e.g., Parisi v. de Kingston, 357 So. 3d 1254, 1257 (Fla. 3d DCA 2023) ("A trial court's legal conclusions and interpretation of a statute are reviewed de novo.").[3] On appeal, Araujo argues that the May 2004 Order is subject to recognition and enforcement through two alternative procedural mechanisms: (1) the Act and (2) common law comity.

### a. The Act

"States are not required to recognize judgments rendered in foreign countries under the Full Faith and Credit Clause of the Constitution of the United States." Osorio v. Dole Food Co., 665 F. Supp. 2d 1307, 1322 (S.D. Fla. 2009), aff'd sub nom. Osorio v. Dow Chem. Co., 635 F.3d 1277 (11th Cir. 2011). However, Florida, like other states, has adopted a variant of the Uniform Foreign Money–Judgments Recognition Act. See §§ 55.601-07, Fla. Stat. (2023). "The [Act] was adopted in Florida in 1994 to ensure the recognition abroad of judgments rendered in Florida." Nadd v. Le Credit Lyonnais, S.A., 804 So. 2d 1226, 1228 (Fla. 2001). "[T]he intent of the Act .

---

[3] Both parties cite the standard of review that is applicable when reviewing orders dismissing for failure to state a cause of action, which requires accepting the allegations in the complaint as true. However, we need not go there because nowhere in the Act or case law are pleadings required. See Chabert v. Bacquie, 694 So. 2d 805, 811 (Fla. 4th DCA 1997) ("The common law procedure for recognition of a foreign money judgment . . . was cumbersome because *it required an entirely new action, with its own pleadings and evidence*, simply to go after property of the judgment debtor within our jurisdiction. . . . *The Act certainly remedies . . . these concerns and provides a speedier and more certain framework for recognition.*" (emphasis added)).

. . is to provide a speedy and certain framework for recognition of foreign judgments." Laager v. Kruger, 702 So. 2d 1362, 1363 (Fla. 3d DCA 1997).

Because this appeal comes to us with an unusual procedural history, we review the proper procedure set forth in the Act for the recognition and enforcement of a foreign final judgment. As our Supreme Court has explained:

> If a judgment creditor wishes to enforce a judgment in Florida under the [Act], he must first file the judgment with the clerk of court of the county or counties where enforcement is sought. See § 55.604, Fla. Stat. The judgment is then recorded in that county. See id. Once the registration and recordation are complete, the clerk sends notice to the debtor, who then may file a notice of objection within thirty days of service. See § 55.604(2), Fla. Stat. Whether or not the judgment debtor responds within the thirty-day period, either party may apply for a hearing regarding recognition. See § 55.601(3), Fla. Stat. If no objections are filed within thirty days, the clerk of court files a statement stating that fact. Under such a circumstance, the judgment creditor is entitled to enforcement without a hearing.

Nadd, 804 So. 2d at 1228–29.

"Under the [Act], a foreign judgment is prima facie enforceable if it 'is final, conclusive, and enforceable where rendered, even though an appeal therefrom is pending or is subject to appeal.'" Osorio, 665 F. Supp. 2d at 1323–24 (quoting § 55.603, Fla. Stat.). "The party seeking enforcement has the initial burden of proof that the judgment is final, conclusive, and enforceable where rendered." Id. at 1324; see also Nadd, 804 So. 2d at

7

1231 ("The language of section 55.603 makes it clear that the first question in the recognition process is whether or not the foreign judgment is 'final and conclusive and enforceable' in the country where the judgment was rendered.").

Araujo failed to meet its initial burden. Below, Araujo struggled to produce a Brazilian final judgment, and after attaching numerous documents (many of which were not judicial orders), it ultimately relied on the May 2004 Order. But this Order contains no indication that it is final. See, e.g., S.L.T. Warehouse Co. v. Webb, 304 So. 2d 97, 99 (Fla. 1974) ("Generally, the test employed by the appellate court to determine finality of an order, judgment or decree is whether the order in question constitutes an end to the judicial labor in the cause, and nothing further remains to be done by the court to effectuate a termination of the cause as between the parties directly affected."). Indeed, it is clear from the record that judicial labor in Brazil continued well after entry of the May 2004 Order.

Moreover, the Act defines an "out-of-country foreign judgment" as "any judgment of a foreign state *granting or denying recovery of a sum of money* . . . ." § 55.602(2) (emphasis added). The May 2004 Order, on its face, does not grant or deny recovery of any sum of money. The Order simply explains that Araujo's "Monitory Action" was converted into an "Enforcement Action"

8

because Dantzler failed to file a timely reply. The only hint of a monetary amount is at the end of the order, which simply states "Fees 10%."

Since the May 2004 Order contains no language of finality nor does it specify any sum of money, Araujo also relies on the Abstract of Record. This document is not a court order nor is it incorporated into any order by reference; it was prepared by the Brazilian Court Office Head *over 15 years* after the May 2004 Order. Even if this document were a court order, the amount specified is problematic. The original amount Araujo sought was BRL $304,641.34 (USD $ 103,654.76). As of September 2019, the amount has ballooned into over 2.5 million BRL, and it is impossible to determine from the Abstract of Record how this amount has been calculated. Arguably, much of this amount is due to accruing interest, but it could also include taxes, fines, or other penalties, which are not enforceable under the Act. See § 55.602 ("'Out-of-country foreign judgment' means any judgment . . . *other than a judgment for taxes, a fine, or other penalty.*" (emphasis added)).

Because Araujo has failed to attach a final order that grants or denies a sum of money, we conclude that the trial court did not err in refusing to enforce the May 2004 Order pursuant to the Act.

### b. Common Law Comity

Araujo, in the alternative, seeks recognition of the alleged foreign judgment under the common law doctrine of comity. Araujo argues that

common law comity permits courts to recognize a broader range of foreign orders than the Act. See Nahar v. Nahar, 656 So. 2d 225, 228 (Fla. 3d DCA 1995) ("[F]inal judgments of, and certain interlocutory orders by, the highest court of a foreign nation are entitled to comity.").[4]

We decline to resort to common law principles of comity because they have been replaced by the Act. See Nadd, 804 So. 2d at 1228 ("The Act replaced common law principles of comity relating to the recognition of foreign judgments."); see also Chabert v. Bacquie, 694 So. 2d 805, 811 (Fla. 4th DCA 1997) ("The Act effectively replaces the common law principles of comity for recognizing foreign judgments, at least to the extent of any differences between the Act and the common law.").

## III. CONCLUSION

Because the May 2004 Order is not an out-of-country foreign final judgment within the meaning of the Act, it is not subject to recognition or enforcement in Florida. We therefore affirm the trial court's dismissal with prejudice.

Affirmed.

---

[4] Nahar was originally decided in 1993, before the Act's enactment. See Ch. 94-239, Laws of Fla. (creating the Uniform Out-of-country Foreign Money-Judgment Recognition Act, effective October 1, 1994). Although the en banc opinion in Nahar was issued after the Act's effective date (June 1995), it does not mention the Act and only addresses common law comity, which was controlling at the time of the panel opinion.