**NICOR INTERNATIONAL CORPORA-TION and Consultores de la Cuenca Del Caribe a/k/a Carib Consult Plaintiffs**

v.

**EL PASO CORPORATION f/k/a Oceano Corporation or the Coastal Corporation (later the El Paso Energy Corporation) Defendants.**

**Nos. 02–21769–CIV.**

United States District Court,
S.D. Florida.

Nov. 24, 2003.

David Ian Katzman, Schaden Katzman Lampert & McClune, Troy, MI, Richard F. Schaden, Schaden Katzman Lampert & McClune, Broomfield, CO, John D. McClune, Schaden Katzman Lampert & McClune, Troy, MI, for Nicor International Corporation, Consultores de la Cuenca Del Caribe, plaintiffs.

Pedro Julio Martinez–Fraga, Luis Miguel O'Naghten, Alan Theodore Dimond, Greenberg Traurig, Miami, FL, for El Paso Corporation fka Oceano Corporation aka The Coastal Corporation aka El Paso Energy Corporation, defendants.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

MARRA, District Judge.

This Cause is before the Court on the Defendants' Motion for Summary Judg-

ment and supporting Memorandum of Law, filed September 4, 2002, as to the Second Amended Complaint (DE 11, 12), and Defendants' Motion for Summary Judgment and supporting Memorandum of Law, filed September 4, 2002, as to Count I of its Counterclaim (DE 13, 14). On September 4, 2002, the Defendants filed a Statement of Undisputed Facts (DE 16). On September 13, 2002, the Defendants filed an Amended Memorandum of Law (DE 25) in support of its Motion for Summary Judgment as to the Second Amended Complaint and an Amended Statement of Undisputed Facts (DE 26). On October 3, 2002, the Plaintiffs filed a "Combined" Memorandum in Opposition to Defendants' Motions for Summary Judgment ("Response") (DE 36) and Statement of Undisputed Facts (DE 37). On October 18, 2002, the Defendants filed a Reply ("Reply") to Plaintiffs' Response (DE 48). On the same date, the Defendants filed a Supplemental Statement of Undisputed Facts (DE 50). On January 3, 2003 and February 25, 2003, the Plaintiffs filed a First Supplement and a Second Supplement to their Statement of Undisputed Facts (DE 57, 72.) The matter is now ripe for review.

## I. The Pleadings

On July 18, 2003, the Plaintiffs, Nicor International Corporation ("Nicor") and Consultores de la Cuenca Del Caribe a/k/a/ Carib Consult ("Carib") filed a Second Amended Complaint ("Complaint") against the Defendants, the El Paso Corporation ("El Paso") or The Coastal Corporation ("Coastal") (collectively "El Paso/Coastal"). In the Complaint, Nicor and Carib assert the following claims against El Paso/Coastal: Domestication of Judgment (Count I);

Breach of Contract (Count II); Tortious Interference with Contract and/or Prospective Advantageous Business Relations (Count III); Violation of Florida's Racketeer Influenced and Corrupt Organization (RICO) Act, Chapter 895, Florida Statutes (Count IV); Outrageous Conduct Causing Severe Emotional Distress (Count V); and Negligence (Count VI). Plaintiffs allege that subject matter jurisdiction is founded upon diversity of citizenship. (Complaint ¶ 4.)

On August 13, 2003, Coastal filed an Answer and Counterclaim ("Counterclaim") (DE 6) against Nicor and Caribe. In the Counterclaim, Coastal asserts the following claims: Confirmation of Arbitration Award (Count I); Declaratory Judgment (Count II); and Breach of Contract (Count III).

## II. Relevant Facts

The relevant facts, as culled from the affidavits and documentary evidence, for purposes of the instant Motions, are as follows:

### Professional Services Agreement

On January 22, 1993, Coastal and Nicor entered into a Professional Services Agreement ("PSA"). (Defendants' Exhibit 1, PSA at 1–3.) At all relevant times, Coastal was a diversified energy holding company which provides natural gas services. (PSA at 1.) Coastal was organized under the laws of Delaware, with its principal place of business in Texas. (PSA at 1.) At all relevant times, Nicor was a professional consulting company organized under the laws of the Republic of Panama, with its principal place of business in the Republic of Panama.[1] (PSA at 1.)

1. The other two parties in this action are

Carib and El Paso. Carib is a corporation

Under the PSA, Nicor agreed to provide prospective consulting services [2] to Coastal for possible energy-related projects in the Dominican Republic (PSA at 2.) The PSA contains the following arbitration provision ("Arbitration Provision"):

Any dispute arising in connection with this agreement shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by a single arbitrator appointed in accordance with said Rules. The arbitration proceedings shall take place in the City of Dallas, Texas, U.S.A. and be conducted in English.

(PSA ¶ 6.) The PSA also provides that "[t]he parties agree that this contract shall be governed by the laws of the State of Texas, U.S.A." (PSA ¶ 4.)

### Alleged Breach of the Professional Services Agreement

In a letter dated August 9, 1995, Nicor communicated to Coastal that Coastal was in breach of the PSA by pursing energy-related projects in the Dominican Republic through Compania Electrica de Puerto Plata ("CEEP"). (Plaintiffs' Exhibit 9, letter dated August 9, 1995.) At all relevant times, CEEP was a company in which Coastal had an ownership interest. (Plaintiffs' Exhibit 14, Request for Arbitration at 2.)

### Nicor's Assignment of Rights to Carib

On August 18, 1995, Nicor purportedly assigned its rights under the PSA to Carib, which was a fifty-percent share owner

of Nicor. (Plaintiffs' Exhibit 7, Affidavit of Rafael Martinez ¶ 14.)

### Proceedings in the Courts of the Dominican Republic

On September 29, 1995, Carib, the assignee of the PSA, filed suit in the Dominican Republic against Coastal and Coastal's subsidiaries The Coastal Power Company and CEEP. (Plaintiffs' Exhibit 2.)

On October 4, 1996, the Dominican court ruled that it did not have jurisdiction to hear and decide the lawsuit because the parties had agreed to arbitrate the dispute, pursuant to the arbitration provision in the PSA. (Plaintiffs' Exhibit 13.)

On November 27, 1997, the Dominican appellate court "repealed" the lower court's judgment, based, in part, on its finding that Coastal bad "renounced" arbitration. (Plaintiffs' Exhibit 3.)

On May 28, 1998, the Supreme Court of the Dominican Republic dismissed Coastal's appeal. (Defendant's Exhibit 2 at 8.)

### Arbitration Proceedings and Final Award in Coastal's Favor

On October 4, 1999, Coastal submitted a Request for Arbitration before the International Court of Arbitration ("ICA") of the International Chamber of Commerce ("ICC"), naming as respondents Nicor and Carib. (Defendants' Exhibit 5.)

On December 14, 2000, the Arbitrator entered an Award on Jurisdiction, finding that Coastal had not waived its right to arbitrate and that it had jurisdiction to

---

organized under the laws of the Dominican Republic. Carib is the alleged assignee of Nicor's rights under the PSA, and a fifty-percent share owner of Nicor. (Affidavit of Rafael Martinez.) El Paso is an entity related to Coastal. Coastal merged with El Paso in January 2001.

**2.** The Court does not address the issue of whether the services were intended to be exclusive or non-exclusive.

hear the parties' dispute ("Award on Jurisdiction"). (Defendants' Exhibit 2.)

On August 13, 2001, the Arbitrator issued a Final Award finding in favor of Coastal. The Arbitrator found that Coastal had not breached the PSA and that Coastal was entitled to fees and costs ("Final Arbitration Award"). (Defendants' Exhibit 4.)

**Issuance of Sentence in the Dominican Courts in Nicor's Favor**

On September 6, 2001, the Dominican Court of Appeals issued its "sentence" in favor of Nicor wherein the Court declared that Coastal breached the PSA and is liable for damages arising out of the breach. (Plaintiffs' Exhibit 16, Affidavit of Juan Ferrand at ¶ 5.)

Pursuant to the terms of the sentence and the Dominican Code, Nicor/Carib submitted their "statement of damages" ("Statement of Damages"). To date, Coastal has not responded to the Statement of Damages. As a result, Coastal may have waived their right to object to the damages presented by Nicor/Carib, which damages stand in the amount of $57,294,026. (Plaintiffs' Exhibit 16, Affidavit of Juan Ferrand at ¶ 6–7.)

**Post–Sentence Proceedings**

On July 17, 2002, El Paso filed a "Request to Grant Exequatur to a Foreign Arbitration Award," in the Dominican Republic court. (Exhibit 1 to Plaintiffs' First Supplement.)

On November 12, 2002, the Dominican courts denied Coastal's petition. (Exhibit 2 to Plaintiffs' First Supplement.)

**III. Legal Standard**

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at rial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the non-moving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

When deciding whether summary judgment is appropriate, the Court must view

the evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (citations and quotations omitted). The Court must "avoid weighing conflicting evidence or making credibility determinations." *Hilburn v. Murata Electronics N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir.1999). Rather, the determination is whether there are any genuine issues of fact which should properly be resolved by the fact finder because they can be resolved in favor of either party. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

## IV. Discussion

### A. Dominican Republic Sentence is Not Entitled to Recognition (Count I of the Second Amended Complaint)

In Count I of the Second Amended Complaint, Nicor and Carib seek domestication of a foreign "sentence" dated September 6, 2001, issued by the Dominican Republic Court of Appeals. (Complaint ¶ 13.) The Court's jurisdiction over the claims asserted in the Complaint is based upon the diversity of citizenship of the parties. (Complaint ¶ 4.)

In an action based upon diversity jurisdiction, a court must apply the law of the forum in determining whether to recognize and enforce a foreign country judgment. *Turner Entrn't Co. v. Degeto Film*, 25 F.3d 1512, 1520 n. 12 (11th Cir.1994) ("[a]ctions to recognize and enforce foreign judgments in diversity cases are matters of state law.").[3] Because this Court's jurisdiction over the claims in the Complaint is based on diversity of citizenship, (*see* Complaint ¶ 4), Florida law governs whether this Court should give effect to the Dominican Republic sentence.[4]

Florida's version of the Uniform Out–of–Country Money–Judgments Recognition Act ("Uniform Act") governs the recognition of foreign judgments. §§ 55.601–55.607, Fla. Stat.; *Chabert v. Bacquie*, 694 So.2d 805, 811 (Fla. 4th DCA 1997). The Uniform Act replaces the common law principles of comity of recognizing foreign judgments, but only to the extent of any differences between the Act and the common law. *Id.* at 811.[5]

**3.** The Restatement of the Law (Second) provides: "[t]he Supreme Court of the United States has never passed upon the question of whether federal or State law governs the recognition of foreign nation judgments. The consensus among the State courts and lower federal courts is that, apart from federal question cases, such recognition is governed by State law and that the federal courts will apply the law of the State in which they sit." Restatement (Second) of Conflicts § 98 cmt. C (Supp.1988).

**4.** The parties' choice of law provision in the PSA provides that "this contract shall be governed by the laws of the State of Texas, U.S.A." (PSA at 2.) The issue of whether to recognize a foreign judgment, however, is not a matter concerning the contract. The Court notes that even if Texas law applied, the Court's ultimate resolution of this matter would not be different under Texas law since both Texas and Florida follow the Uniform Out–of–Country Money–Judgments Recognition Act.

**5.** Common law principles of comity include (1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what it decent and just. *Turner Entrn't Co. v. Degeto Film*, 25 F.3d 1512, 1519 (11th Cir.1994) (citing *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895)).

### 1. The Requirement of a Specific Sum of Money

The Uniform Act applies to "any foreign judgment that is final and conclusive and enforceable where rendered," even though an appeal therefrom is pending. § 55.603, Fla. Stat. A foreign judgment means "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine, or other penalty." § 55,602(2), Fla. Stat.

■ An order that does not award or deny a specific sum of money is not recognizable under the Uniform Act. *See Bianchi v. Savino Del Bene Int'l Freight Forwarders, Inc.*, 329 Ill.App.3d 908, 264 Ill. Dec. 379, 770 N.E.2d 684, 696–98 (2002) (Italian judgment not enforceable under Illinois' version of the uniform act where the judgment did not grant a sum of money); *Farrow Mortgage Services Pty Ltd. v. Singh*, No. CA 937171, 1995 WL 809561, at * 4 (Mass.Super.1995) (Australian judgment not enforceable under comparable Massachusetts law to the extent that it awarded undetermined costs).

■ In this case, the Dominican Republic sentence dated September 6, 2001 does not grant recovery of a "specific sum of money." On that basis alone, the sentence is not entitled to recognition as a "foreign judgment" under the Uniform Act. §§ 55.602, 55.603, Fla. Stat. Nicor and Carib nevertheless contend that because Coastal did not respond to Carib's Statement of Damages in the Dominican proceedings, *see* Plaintiffs' Exhibit 8, the sentence is rendered final in the amount of the Statement of Damages. (Plaintiffs' Response at 5.)

An Illinois state court recently had the occasion to consider, under a similar set of facts, whether a foreign judgment that did not contain a specific sum of money was recognizable and enforceable under Illinois' version of the Uniform Foreign Money–Judgments Recognition Act ("Illinois' Uniform Act"). *Bianchi*, 264 Ill. Dec. 379, 770 N.E.2d at 687. The judgment in *Bianchi*, which stemmed from a wrongful termination action, did not contain a specific sum of money but instead awarded lost wages from the date of termination until the date of reinstatement, which reinstatement never occurred. *Id.* The plaintiff Bianchi attempted to cure the uncertainty of the Italian judgment by presenting the Illinois court with the "Intimation of Payment" which, pursuant to Italian rules of procedure, she provided to the other party during the Italian proceedings as notification of her computation of damages. *Id.* at 697. Bianchi contended that because the other party did not respond to the Intimation of Damages, the amount should be considered "in full force and effect." *Id.* at 698. Relying on the express terms of Illinois' Uniform Act, however, the *Bianchi* court refused to rely upon the Intimation of Damages to cure the deficiency of the judgment, stating that the Act does not provide for recognition of foreign judgments on the basis of any document other than the judgment itself. *Id.* The Illinois court further stated that Bianchi had failed to plead and prove any of the following: (I) the legal significance of an Intimation of Damages under Italian law; (ii) that her Intimation of Damages met the form and contents requirements of an Intimation; (iii) the method of her calculations in her Intimation of Damages; or (iv) proof of service of her Intimation of Damages. *Id.* For these reasons, the court granted the defendant's motion to dismiss, holding that the Italian judgment

was not enforceable in Illinois under Illinois' Uniform Act. *Id.*

Returning to the case at bar, this Court, like the court in *Bianchi*, notes that the Uniform Act does not provide for the recognition of foreign judgment on the basis of any document other than the judgment itself. However, assuming *arguendo* that the Uniform Act would permit consideration of multiple documents, the Court will consider whether the Dominican sentence, when coupled with Nicor's Statement of Damages, constitutes a "judgment."

The Dominican sentence required the parties to proceed with respect to damages under Articles 523 and 524 of the Dominican Republic Civil Code ("Dominican Code"). (Sentence of the Dominican Republic Court of Appeals (DE 60).) Articles 523 and 524 of the Dominican Code apply "[w]hen in a judgment no damages have been established." (Plaintiffs' Exhibit 27.) On December 4, 2001, Nicor/Carib submitted a Statement of Damages. To date, Coastal has not responded to the Statement of Damages. Nicor and Carib argue that Coastal waived its right to object to the damages presented by Carib, which damages were in the amount of $57,294,026. (Plaintiffs' Exhibit 16, Affidavit of Juan Ferrand at ¶¶ 6–7.) Nicor contends that because Coastal waived its right to object to the Statement of Damages, "the sentence judgment is final in the amount of the settlement statement." (Response at 5.) Nicor relies upon a provision in Article 98, incorporated by reference in Article 524, which provides: "The plaintiff shall have but eight days to become apprised of the documents and answer; and once this term has elapsed, *a sentence* shall be pronounced in the light of the documents *of the defendant.*" Art. 98, Dominican Code (emphasis added).

Initially, the Court notes that it is doubtful that this provision of the Dominican Code even applies to facts of this case since Nicor/Carib, the plaintiff in the Dominican litigation, is the party that prepared the documents on damages, not the defendant Coastal. Therefore, there are no documents prepared by the defendant upon which, under Article 98 of the Dominican Code, a sentence could be pronounced.

■ Nevertheless, even if the provision applied to a situation where the plaintiff presents documents to the defendant and the defendant fails to respond, it is clear that no sentence on the issue of damages has been pronounced by the Dominican courts. Moreover, none of the parties has presented to the Court any Dominican legal authority which dispenses with the necessity of "a sentence" where the defendant fails to respond, even if that failure to respond might waive the defendant's right to object to the plaintiff's damages. Nicor and Carib proffer only the affidavit of Dr. Juan Ferrand in support of their view of the legal significance of the Statement of Damages. (Plaintiffs' Exhibit 16, Affidavit of Juan Ferrand at ¶ 7.) In his affidavit, Ferrand states, "in my opinion, and consistent with the law of this country, the defendants have waived their right to object to the damages presented by the plaintiff, and said damages therefore stand in the amount of $57,294,026.00." (Plaintiffs' Exhibit 16, Affidavit of Juan Ferrand at ¶ 7.) Again, Ferrand's affidavit is evidence that under Dominican law Coastal may have waived its right to object to the damages presented by Nicor and Carib, but is not evidence under Dominican law that Coastal has waived its right to a pronouncement of a judicial sentence in light of the documents of the plaintiffs. Moreover, pursu-

ant to Rule 44.1 of the Federal Rules of Evidence, the Court, as a result of its own research, has not uncovered any Dominican legal authority which would support Nicor and Carib's view that the Statement of Damages, in and of itself, establishes the amount of damages to which Nicor and Carib are entitled.[6] In conclusion, the Court does not find that Nicor/Carib's Statement of Damages cures the "sum of money" deficiency of the Dominican sentence which they seek to domesticate.

In the absence of a final award of a sum of money, this Court cannot recognize the Dominican sentence as a "judgment" under the Uniform Act. For the sake of completeness, however, the Court will next consider whether the Dominican sentence would be entitled to recognition, if it were a final judgment under the Uniform Act.

### 2. Dominican Proceeding was Contrary to Parties' Agreement

The Uniform Act provides, in relevant part, "*[e]xcept as provided in s. 55.605,* a foreign judgment meeting the requirements of s. 55.603 is conclusive between the parties to the extent that it grants or denies recovery of a sum of money." § 55.604, Fla. Stat. (emphasis added). Pursuant to section 55.605, a foreign judgment need not be recognized under the Uniform Act if, among other reasons, "[t]he proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by pro-

ceedings in that court." § 55.605(2)(e), Fla. Stat. This is a permissive, as opposed to mandatory, ground for nonrecognition. *Chabert v. Bacquie,* 694 So.2d 805, 814 (Fla. 4th DCA 1997). The party arguing for nonrecognition has the burden of proof. *Id.* at 815.

It is undisputed in this case that the PSA contains a binding Arbitration Provision. Nicor and Carib argue, however, that Coastal has waived its right to arbitrate by participating in the Dominican litigation. However, the issue of whether Coastal waived its right to arbitration has already been argued and resolved in the arbitration proceeding. More particularly, the issue of waiver was considered by the Sole Arbitrator nearly three years ago when the Sole Arbitrator issued the Award on Jurisdiction. (Defendants' Exhibit 2.) The Sole Arbitrator expressly stated in the Award on Jurisdiction that he was addressing the issue of waiver:

> The issue to be decided at this stage of the proceedings is whether, even though the formal requirements of validity of the arbitration have been met, the arbitration may or may not proceed to the extent that *the parties have waived their contract-provided right to arbitrate the dispute.*

(Defendants' Exhibit 2, Award on Jurisdiction ¶ 20 (emphasis added)). Nicor and Carib had an opportunity to present arguments and evidence to the Sole Arbitrator. (Defendants' Exhibit 6, Counterclaim of Request for Arbitration dated November

---

6. "The court, in determining foreign law, may consider any relevant material or sources, including testimony whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P. 44.1. The Court notes that although foreign law need not be proved in an evidentiary sense (as was

the case in *Bianchi* ), *see Forzley v. AVCO Corp. Elecs. Div.,* 826 F.2d 974, 979 n. 7 (11th Cir.1987), "the court is free to insist on a complete presentation [of the issue concerning foreign law] by counsel." Advisory Committee Notes to Rule 44.1.

3, 1999; Exhibit 7, Correspondence to the ICA dated November 17, 1999; Exhibit 10, Brief to the Arbitrator dated May 10, 2000.) Based upon the evidence, the Sole Arbitrator concluded that Coastal "had not waived its right to have disputes under such agreement [the PSA] resolved pursuant to its terms." (Defendants' Exhibit 2 at 12.)

 Based upon the doctrine of collateral estoppel, Nicor and Carib contend that the Sole Arbitrator was precluded from reaching the decision on the issue of waiver because of the prior inconsistent ruling of the Dominican appellate court on the same issue. (Response at 15.) The general requirements for application of the doctrine of issue preclusion or collateral estoppel are as follows: (1) that the issue at stake be identical to the one involved in the prior litigation; (2) that the issue have been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation have been a critical and necessary part of the judgment in that earlier action. *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 692 (11th Cir.1984).[7] It is widely recognized that the finality requirement for issue preclusion is less stringent than for claim preclusion. *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir.2000). For purposes of issue preclusion, "final judgment" means any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect. *Id.* at 1339 n. 47 (citing Restatement (Second) of Judgments § 13 (1980)). However, "[w]hen there is a significant likelihood of unfairness, however, application of the doctrine constitutes an abuse of discretion." *Steelmet*, 747 F.2d at 692.

In support of their collateral estoppel argument, Nicor and Carib primarily rely upon the Eleventh Circuit case of *Kelly v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067 (11th Cir.1993). However, *Kelly* does not address the effect of a ruling by a *foreign* nation on an arbitration proceeding. Instead, the *Kelly* case addresses the effect of a prior federal court judgment on an arbitration proceeding. Nevertheless, the court analyzes the case below.

In *Kelly*, the Eleventh Circuit considered whether the district court properly resolved the defense of res judicata rather than leaving the issue for the arbitrators to resolve. *Kelly*, 985 F.2d at 1068. The court concluded that the district court properly reached the res judicata issue rather than leaving it for the arbitrators. *Id.* at 1069. The court reasoned that allowing the courts to decide the res judicata issue prevented piecemeal litigation and protected prior judgments. *Id.* at 1069.

In a more recent case, however, the Eleventh Circuit recognized the right of arbitrators to first decide the res judicata effects of prior court judgments. *Weaver v. Florida Power & Light Co.*, 172 F.3d 771, 774 (11th Cir.1999). In *Weaver*, the Eleventh Circuit considered the issue of whether a district court properly enjoined an arbitration proceeding when the issues being arbitrated had already been dismissed or adjudicated in the defendant's favor through a prior federal court judgment. *Weaver*, 172 F.3d at 772–73. The *Weaver* court held that the district court abused its discretion by enjoining the arbitration proceeding. *Id.* The court held

---

7. Neither party has argued that the Court should consider the preclusive effect of the Dominican ruling under Dominican, as opposed to federal, collateral estoppel principles. The Court notes that the applicable state law on collateral estoppel is closely aligned with federal law.

that the defendant had an adequate remedy at law in that the defendant could raise the issues of the res judicata of the prior judgment and waiver of arbitration as affirmative defenses in the arbitration proceedings. *Id.* at 774. The court refused to find that such defenses could not be raised in an arbitration proceeding, reasoning that the federal policy favoring arbitration ruled out any judicial suspicion of the competency of the arbitrator to decide issues of waiver, res judicata, and other defenses that challenge whether a matter should be arbitrated at all. *Id.* The court noted that if the arbitrators were to ignore the defendant's defenses, a district court could then vacate (or refuse to enforce) the arbitration award. *Id.* at 775 n. 9. The court therefore concluded that the arbitration proceeding should not have been enjoined. *Id.* at 775. In reaching this conclusion, the court distinguished the *Kelly* case. *Id.* at 775 n. 10. The Court stated that although in *Kelly* the court recognized that under the Federal Arbitration Act a district court is not completely forbidden from enjoining an arbitration proceeding, such an injunction is not appropriate where the litigant has an adequate remedy at law. *Id.*

██ In deciding that a defendant's ability to raise the defense of res judicata in an arbitration proceeding is an adequate remedy at law, the Eleventh Circuit in *Weaver* necessarily recognized that arbitrators are competent to decide the issue of res judicata in the first instance. One district court, commenting on the law in this circuit after *Weaver,* remarked that "it appears that the Eleventh Circuit now ac-

tually endorses the right of arbitrators to first decide the res judicata effects of prior court judgments." *Collins v. D.R. Horton, Inc.,* 252 F.Supp.2d 936 (D.Ariz.2003) (discussing the *Kelly* and *Weaver* cases). Consequently, the Court rejects the Plaintiffs' argument that under *Kelly* the law in this circuit is that "a res judicata defense to [an] arbitrable claim is to be decided by the court." (Response at 15.) Instead, the law in this circuit is that a res judicata defense is to be raised and decided by the arbitrator in the first instance; and that only if the arbitrator ignores the defense would it then be appropriate for the court to vacate an arbitration award.[8] Notably, although not addressed yet in this circuit, other courts have held that the res judicata effect of a *foreign* judgment is similarly an issue for the arbitrator to resolve. *See e.g., South Ionian Shipping Co. Ltd. v. Hugo Neu & Sons Int'l Sales Corp.,* 545 F.Supp. 323, 324–25 (S.D.N.Y.1982) (res judicata effect of a prior Greek judgment was an issue for the arbitrator to resolve).

██ In this case, the record evidence is clear that the Sole Arbitrator did not disregard the Dominican court's ruling. Indeed, the Sole Arbitrator premised its finding that Coastal did not waive arbitration on "all the facts" and "procedural steps" of the parties. (Award on Jurisdiction at 9.) Notably, the fact section of the Award on Jurisdiction states that "on November 27, 1997 Court of Appeals of the Dominican Republic ... ruled that the Dominican courts had jurisdiction due to the fact, inter alia, that Claimant and Respondents waived their rights under the arbitration clause in the PSA." (Award on

---

8. To the extent that the other cases relied upon by the Plaintiffs stand for a contrary holding they are not persuasive. *Miller Brewing Co. v. Fort Worth Distr. Co.,* 781 F.2d 494 (5th Cir.1986), *Aircraft Braking Sys. Corp. v.*

*Local 856, Int'l Union, United Auto., Aerospace and Agric. Implement Workers,* 97 F.3d 155, 161 (6th Cir.1996), and *John Hancock Mutual Life Ins. Co. v. Olick,* 151 F.3d 132 (3d Cir.1998).

Jurisdiction at 8.) Thus, the Sole Arbitrator expressly considered the Dominican court's ruling on waiver, but decided that Coastal had not waived its right to arbitrate. Since the Sole Arbitrator did not "ignore" the prior adverse ruling, this Court is not in a position to second-guess its decision. *Weaver,* 172 F.3d at 775 n. 9.

Additionally, the Court finds that even if the Sole Arbitrator did ignore the defense, application of the collateral estoppel doctrine in this case would result in a "significant likelihood of unfairness." *Steelmet,* 747 F.2d at 692. The Eleventh Circuit has held that collateral estoppel should be denied based upon principles of equity and fairness where, for example, the burden of proof is allocated differently in the two proceedings. *Id.* The Restatement (Second) of Judgments similarly states:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: ... (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action ...

Restatement (Second) of Judgments § 28 (1980).

In this case, in the arbitration proceeding, the Sole Arbitrator expressly stated that, under federal and applicable state law, Carib and Nicor bore the burden of proving Coastal's alleged waiver of its contractual right to arbitration and that the burden was a "heavy" one. (Award on Jurisdiction at 7 n. 20 & 21, 11.) In contrast, the Dominican sentence does not indicate upon which party the Dominican court placed the burden of proof with respect to the issue of waiver. Thus, based upon the record, the Court finds that while the issue of waiver was first litigated before the Dominican court, there is no evidence that the *precise* issue of whether Nicor and Carib carried their "heavy burden" of showing that Coastal had waived its right to arbitration had ever been previously litigated. Accordingly, the Court finds that the doctrine of issue preclusion or collateral estoppel does not apply to the facts of this case.

In summary, the Court finds that the prior inconsistent ruling by the Dominican courts on the issue of waiver did not preclude the Sole Arbitrator from reexamining the issue. Finding that the Sole Arbitrator's decision on the issue of waiver was within his authority and not precluded, the Court next addresses the res judicata effect of the Sole Arbitrator's decision.

The Eleventh Circuit has held that an arbitration decision can have res judicata effect as to all matters embraced in the controversy submitted to the arbitrator, just as a judgment by a court can have res judicata effect. *Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1360 (11th Cir.1985); *see Dadeland Station Associates, Ltd. v. St. Paul Fire and Marine Ins. Co.,* No. 01–8287, 2003 WL 21981974, at * 12 (S.D.Fla.2003). "When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity to present evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just

as determinations of a court would be treated." *Greenblatt,* 763 F.2d at 1360; Restatement (Second) of Judgments § 84(3) and comment c (1982).

■ In this case, the Court finds that the arbitration proceeding afforded the parties the basic elements of an adjudicatory procedure. Although the proceeding was conducted through the mails, Nicor and Carib have not shown how that procedure hindered their ability to present evidence or argue their position. The Court therefore finds that the Sole Arbitrator's resolution of the issue of waiver precludes this Court from resurrecting it.

Based upon the foregoing, the Court finds that El Paso/Coastal has met its burden of proving that the proceeding in the Dominican courts was contrary to the binding Arbitration Provision in the parties' PSA, which, as determined by the Sole Arbitrator in the arbitration proceeding, was not waived. Pursuant to the Uniform Act, therefore, the "judgment" issued by the Dominican court need not be recognized by this Court.

In light of the strong federal policy in favor of enforcing agreements to arbitrate disputes, this Court refuses, under § 55.605(2)(e) of the Florida Statutes, to recognize, enforce, or give res judicata effect to the Dominican "judgment." The Dominican "judgment" was contrary to the agreement between the parties as to the where the dispute was to be resolved. Consequently, El Paso/Coastal is entitled to summary judgment as to Count I.

### B. Confirmation of Arbitration Award

Coastal seeks confirmation of the Final Arbitration Award which was in its favor in Count I of its Counterclaim. The first issue before the Court is which law applies to the Court's determination of whether to confirm the Final Arbitration Award.

■ The New York Convention is codified at chapter two of the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 201–208. The New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") applies to "all arbitral award[s] arising out of a legal relationship, whether contractual or not, which is considered commercial ... [except that] a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention ...." 9 U.S.C. § 202. Thus, "an arbitral award made in the United States, under American law, falls within the purview of the New York Convention—and is thus governed by Chapter 2 of the FAA—when [at least] one of the parties to the arbitration is domiciled or has its principal place of business outside of the United States." *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte,* 141 F.3d 1434, 1440–41 (11th Cir.1998).

■ The Inter–American Convention on International Commercial Arbitration ("Inter–American Convention") is codified at chapter 3 of the FAA. 9 U.S.C. §§ 301–307. In a case where a majority of the parties to an arbitration agreement are citizens of a nation or nations that have ratified the Inter–American Convention, the Inter–American Convention shall apply and trumps the New York Convention, 9 U.S.C. § 305.

■ In this case, the only parties to the PSA, i.e. Nicor and Coastal, are citizens of Panama and the United States, respectively. (PSA at 1.) Both Panama and the United States have ratified the Inter–American Convention. Accordingly, the Inter–American Convention applies.

The Inter–American Convention provides that "[a]rbitral decisions or awards made in the territory of a foreign State shall, on the basis of reciprocity, be recognized and enforced under this chapter *only if that State has ratified or acceded to the Inter–American Convention.*".[9] 9 U.S.C. § 304 (emphasis added). The Inter–American Convention's reference to "a territory of a foreign State" includes the United States, such that awards rendered in the United States are not excluded from the court's jurisdiction. *Productos Mercantiles E Industriales, S.A. v. Faberge USA,* 23 F.3d 41, 44 (2d Cir.1994).

Under this provision of the Inter–American Convention, the Court must determine whether the Final Arbitration Award was made in a nation that is a signatory to the Inter–American Convention. The ICC Rules of Arbitration, which the parties agreed would govern their arbitration proceeding, *see* PSA at 2, provide that "[t]he Award shall be deemed to be made at the place of the arbitration and on the date stated therein." (Defendants' Exhibit 24, ICC Rules of Arbitration, Article 25.) Here, the Final Arbitration Award provides that the location of the arbitration was Dallas, Texas. (Defendants' Exhibit 4, Final Arbitration Award at 28.) That provision is in accordance with the parties' PSA, which provides that the arbitration shall take place in Dallas, Texas. (Defendants' Exhibit 1, PSA at 2.) Accordingly, the Court therefore holds that the Final Arbitration Award was made in the United States, which is a signatory to the Inter–American Convention.

In so holding, the Court notes that the fact that the International Court of Arbitration is located in France, where several initial determinations were made and where documents were transmitted to and from, is insufficient to rebut the presumption that the Final Arbitration Award was made in the United States. The Final Arbitration Award was rendered by the Sole Arbitrator, not the International Court of Arbitration. (Defendants' Exhibit 24, ICC Rules of Arbitration, Article 27.)[10]

In summary, the Court holds that the Final Arbitration Award was made in the United States, which is a signatory to the Inter–American Convention. Because the Final Arbitration Award was made in a nation that is a signatory of the Inter–American Convention, the Final Arbitration Award is entitled to be recognized and enforced, unless an appropriate exception for non-recognition applies, 9 U.S.C. § 304. The Court next turns to the issue of whether an appropriate exception for non-recognition applies.

 The Inter–American Convention incorporates by reference the grounds for non-recognition set forth in the New York Convention. 9 U.S.C. § 302 (incorporating by reference sections 202, 203, 204, 205, and 207 of the FAA). The New York Convention provides that upon application for an order confirming an arbitration award, "the court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforce-

---

**9.** Panama and United States are both signatories to the Inter–American Convention. Mexico, where the Sole Arbitrator resides, is also a signatory to the Inter–American Convention.

**10.** If the Court were inclined to find that the Final Arbitration Award was made in any country other than the United States it would

be inclined to find that the award was made in Mexico, where the documents and evidence were actually considered by the Sole Arbitrator and where the Final Arbitration Award may have been signed. Mexico is also a signatory of the Inter–American Convention.

ment of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added). The New York Convention contains seven grounds for non-recognition. New York Convention, Art. V. These grounds are the exclusive defenses against enforcement of a foreign arbitral award. *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte,* 141 F.3d 1434, 1445–46 (11th Cir.1998).

Under Article V, recognition and enforcement may be refused if the party resisting the award presents to the court proof that one of the following grounds for non-recognition applies:

(a) The parties to the arbitration agreement were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made;

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced;

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention, Art. V(1).

Recognition may also be refused if the court finds that either of the following two additional grounds for non-recognition is met:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of the country where the enforcement is sought;

(b) The recognition or enforcement of the award would be contrary to the public policy of the country where the recognition or enforcement is sought.

New York Convention, Art. V(2).

In this case, Nicor and Carib do not clearly identify which, if any, of the foregoing grounds for non-recognition specified in the Convention apply to this case, but instead argue that the Final Arbitration Award should not be recognized for the following reasons: (i) Coastal waived its right to arbitrate, and (ii) the award violates public policy and is unfair because (1) all necessary parties were not present, (2) the arbitration was paid solely by Coastal, (3) the proceeding did not take place in Texas, and (4) the arbitrator was biased. (Response at 26–38.) The Court will address each of these arguments to determine whether one or more of them fall within any of grounds for non-recognition specified in the New York Convention.

██ Nicor and Carib first argue that the Final Arbitration Award should not be

recognized because Coastal waived its right to arbitrate. Waiver is not one of the enumerated grounds for non-recognition under the New York Convention.[11] Thus, as a matter of law, Nicor and Carib's argument based upon waiver is unavailing. *Consorcio Rive, S.A. v. Briggs, Inc.,* 134 F.Supp.2d 789, 795 (E.D.La.2001). Moreover, as discussed above, the Sole Arbitrator's resolution of the issue of waiver precludes this Court from resurrecting it. *(See* discussion in IV.A. above.)

 Nicor and Carib also argue that the Final Arbitration Award violates public policy and is unfair because (1) all necessary parties were not present, (2) the arbitration was paid solely by Coastal, (3) the proceeding did not take place in Texas, and (4) the arbitrator was biased. These arguments directly or indirectly relate to the arbitral procedure. (Response at 26–38.) Under Article V(1)(d) of the New York Convention, the Court need not recognize the Final Arbitration Award if Nicor proves that the composition of the arbitral authority or the arbitral procedure was not in accordance with the parties' agreement or the law of the country where the arbitration took place, i.e. United States law. New York Convention, Art. V(1)(d). The Court takes each of these four arguments in turn.

First, Nicor and Carib contend that the arbitration proceeding was unfair because two parties were lacking: CEEP, the company through which Coastal pursued energy-related projects in the Dominican Republic; and "CDE," the Dominican State monopoly corporation and a voluntary intervenor in the Dominican litigation. (Response at 35.) The Court rejects this argument. The arbitration proceeding involved claims arising out the PSA entered into by and between Coastal and Nicor. (Final Arbitration Award at 3.) Neither CEEP or CDE were parties to the PSA. After consideration of the pleadings, the evidence, and argument of counsel, the Sole Arbitrator concluded that Coastal did not breach the PSA as a result of its negotiations with CEEP. The presence of CEEP and CDE were not necessary to the Sole Arbitrator's determination. The fact that CEEP and CDE were parties to the Dominican litigation does not render them necessary to the arbitration proceeding.

Second, Nicor and Carib contend that the arbitration proceeding was unfair because the proceeding was paid solely by Coastal. Nicor and Carib fail to indicate how Coastal's payment of the arbitration proceeding renders the proceeding unfair. There is no evidence, for example, that Coastal's payment for the arbitration proceeding caused the Sole Arbitrator to show favor toward Coastal. The Court therefore rejects this argument as well.

Third, Nicor and Carib assert that the arbitration proceeding was unfair because the proceeding did not take place in Texas, pursuant to the parties' PSA. However, as discussed above, the Final Arbitration Award itself states that the location of the arbitration was Dallas, Texas, *see* Defendants' Exhibit 4, Final Arbitration Award at 28, and Nicor and Carib have not submitted sufficient evidence to the Court to raise an issue of fact regarding this question.

Fourth, Nicor and Carib contend that the Sole Arbitrator was biased because he

---

11. Additionally, the Court does not find that the issue of waiver is a matter touching upon the validity of the agreement, a matter of public policy, or any other matter which would allow this Court to refuse to recognize the Final Arbitration Award.

has represented energy corporations in the past. Nicor and Carib also challenge the nationality of the Sole Arbitrator. However, Nicor and Carib do not provide any evidence to show that the Sole Arbitrator's past representation of energy corporations influenced his decision-making process or his findings and conclusions. Similarly, Nicor and Carib do not present any evidence that the nationality of the Sole Arbitrator, being from Mexico, violates Article 9.5 of the ICC Rules, which requires the Sole Arbitrator to be of a nationality other than those of the parties. Thus, the Court rejects each of Nicor and Carib's express arguments for non-recognition of the Final Arbitration Award.

The Court notes that Nicor and Carib seem to suggest in a footnote that the Final Arbitration Award should not be recognized because the Dominican courts have refused to recognize the Award. (Response at 27 n. 27.) Under Article V(1)(e) of the New York Convention, the court need not recognize the Final Arbitration Award if the Award has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made. New York Convention, Art. V(1)(e). Because the Final Arbitration Award was not made in, or under the laws of, the Dominican Republic, the Dominican courts' refusal to recognize the Final Arbitration Award does not supply a ground for non-recognition under the New York Convention. The case of *Baker Marine Ltd. v. Chevron Ltd.*, 191 F.3d 194, 196–98 (2d Cir.1999), cited by Nicor, is therefore inapposite. Morever, a decision by this Court to recognize the decision of the Dominican courts would violate clear United States public policy which favors arbitration. *In Re Arbitration Between Chromalloy Aeroservices v. Arab Republic of Egypt*, 939 F.Supp. 907, 913–14 (D.D.C. 1996)

In summary, this Court finds that Nicor and Carib have failed to present record evidence which raises a question of fact regarding the applicability of any ground for non-recognition of the Final Arbitration Award. Pursuant to the New York Convention, incorporated by reference in the Inter–American Convention, *see* 9 U.S.C. § 302 (incorporating by reference section 207 of the FAA), and because the Court has not found that any of the grounds for refusal or denial of recognition or enforcement of the Final Arbitration Award apply, the Court must confirm the Final Arbitration Award. Accordingly, Coastal is entitled to summary judgment in its favor as to Count I of the Counterclaim.[12]

### C. The Remaining Claims in the Second Amended Complaint (Counts II—VI)

#### 1. Count II is Barred As a Result of the Res Judicata Effect of Arbitration

In Count II of the Second Amended Complaint, Nicor and Carib allege that Coastal breached the PSA. (Complaint at 3–4.)

However, the issue of whether Coastal breached the PSA was already heard and decided by the Sole Arbitrator. (Defendants' Exhibit 4.) Because the arbitration proceeding was in compliance with the terms of the parties' agreement and afforded the parties an appropriate adjudi-

12. Because El Paso/Coastal has not sought summary judgment as to the other claims in the Counterclaim, the Court does not consider those claims.

catory procedure, the Court finds that the Sole Arbitrator's determination of the breach of contract claim is conclusive and entitled to res judicata effect. *Greenblatt,* 763 F.2d at 1360; Restatement (Second) of Judgments § 84(3) and comment c (1982). (*See* discussion at IV.A.2.)[13] El Paso/Coastal is therefore entitled to summary judgment as to Count II of the Second Amended Complaint.

### 2. Count III Fails as a Matter of law

In Count III of the Second Amended Complaint, Nicor and Carib assert a claim for tortious interference with contract and/or prospective advantageous business relations against Coastal or El Paso. (Complaint at 4–8.) Nicor and Carib suggest that Coastal interfered with the PSA entered into between Coastal and Nicor by entering into a relationship with one of Nicor's competitors. (Complaint ¶ 5.) Plaintiffs also contend that Coastal interfered with the enforcement of a Dominican sentence by inducing a third party, the Overseas Private Investment Corporation ("OPIC"), to threaten the President of the Dominican Republic that OPIC would

withhold United States financial support if the Dominican courts enforced the sentence. (Complaint 4–8; Response at 42.)

The Court first considers Plaintiffs' claim of interference with the PSA. It is clear under Florida or Texas law[14] that a claim for tortious interference does not exist against a party to the contract or business relationship. *Cox v. CSX Intermodal, Inc.,* 732 So.2d 1092, 1099 (Fla. 1st DCA 1999); *Holloway v. Skinner,* 898 S.W.2d 793, 795 (Tex.1995).

In this case, Nicor and Carib assert a claim of interference with the PSA against Coastal, a party to that agreement. As a party to the agreement, Coastal and its alleged successor cannot be held liable for tortious interference as a matter of law. Accordingly, Nicor and Carib's claim based upon interference with the PSA fails.

Nicor and Carib also claim, in Count III, that Coastal interfered with the Dominican sentence. However, this Court has uncovered no legal authority for the proposition that Florida, Washington D.C., or Texas[15] recognizes a cause of action for

---

**13.** The Court notes that none of the parties requested a hearing before the Sole Arbitrator on the issue of whether Coastal breached the PSA. (Defendants' Exhibit 4, Final Award at 8.)

**14.** Under Florida's choice of law principles, the state having the most significant relationship to the occurrence and the parties is the state whose law is to be applied. *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980). In this case, the only state to have any relationship to the facts underlying the claim that Coastal interfered with the PSA and the parties is the state of Texas where a party to the PSA, i.e. Coastal, had its principal place of business in Texas and from where Coastal may have negotiated the alleged relationship with Nicor's competitor. (PSA at 1.) For this reason, the Court applies

Texas tort law. Additionally, because the parties argue Florida law in their briefs, the Court also cites Florida law.

**15.** Under Florida's choice of law principles, the state having the most significant relationship to the occurrence and the parties is the state whose law is to be applied. *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980). In this case, only Texas and Washington D.C. have any relationship to the facts underlying the claim that Coastal interfered with the sentence and the parties, as follows: (i) Texas, where a party to the sentence, i.e. Coastal, had its principal place of business and from where Coastal may have allegedly induced OPIC to write the letter in question; and (ii) Washington D.C., where the offending letter was likely written. For this reason, the Court considers the tort law of

tortious interference with a judgment or that under the applicable state law a judgment qualifies as a contract or business relationship for purposes of a tortious interference with contract and/or business relations claim. In the absence of any such legal authority, this Court declines to recognize such a cause of action.

Accordingly, El Paso/Coastal is therefore entitled to summary judgment as to Count III of the Second Amended Complaint.

### 3. Count IV Fails as a Matter of Law

 In Count IV of the Second Amended Complaint, Nicor and Carib claim that Coastal has engaged in racketeering activity, in violation of Florida's Racketeer Influenced and Corrupt Organizations Act ("RICO"), Fla. Stat. § 895.01 et seq.[16] Nicor and Carib have presented evidence that Coastal exerted pressure on OPIC to write a letter, dated March 11, 2002, to the President of the Dominican Republic in which OPIC threatened to withhold United States financial support if the Dominican courts did not honor or enforce the arbitration provision in the parties' agreement. (Plaintiffs' Exhibit 6.) Nicor and Carib claim that the OPIC letter has caused the Dominican courts to refuse to enforce the Dominican sentence.

However, Florida's RICO Act requires the plaintiff to prove a *pattern* of racketeering activity. *Wright v. Sheppard,* 919 F.2d 665, 673 (11th Cir.1990) (finding plaintiff failed to establish liability under federal or state RICO because plaintiff established only single incident of battery and false imprisonment). Section 895.02(4) defines "pattern of racketeering" activity to mean: "engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents . . . ." § 895.02(4), Fla. Stat.

Here, Nicor and Carib have presented evidence of only one instance of possible racketeering activity; Coastal's exertion of pressure on OPIC to write a threatening letter to the President of the Dominican Republic. (Plaintiffs' Exhibit 6.) Based upon the record evidence, therefore, they cannot prevail on their RICO count.

 Additionally, even if Nicor and Carib could prove a pattern of racketeering activity, they have not presented any evidence of a causal connection between the OPIC letter and the Dominican courts' alleged refusal to enforce the Dominican sentence. Instead, Nicor and Carib have presented only the testimony of various

Washington D.C. and Texas. Additionally, because the parties argue Florida law in their briefs, the Court also cites Florida law.

16. Plaintiffs bring their RICO claim upon Florida statutory law. However, under Florida's choice of law principles, the state having the most significant relationship to the occurrence and the parties is the state whose law is to be applied. *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999, 1001 (Fla.1980). In this case, Washington D.C. and Texas have a relationship to the facts underlying the RICO claim and the parties. *See* the preceding footnote. Florida, however, does not appear to

have any relationship to the occurrence or the parties. Under Florida's choice of law principles, therefore, Florida law would not apply in this case and Plaintiffs' RICO claim in Count IV fails as a matter of law. Nevertheless, the Court will consider Plaintiffs' RICO claim as alleged on substantive grounds. The Court notes that the substantive reasons for which Plaintiffs' Florida RICO claim fails are equally applicable to RICO claims brought under the law of any state having any nexus to this case.

lawyers in the Dominican Republic who opine that the OPIC letter was improper. In the absence of any evidence linking the alleged racketeering acts to any harm suffered by Coastal, the Court finds that Nicor and Carib cannot maintain their RICO claim. *O'Malley v. St. Thomas University, Inc.*, 599 So.2d 999, 999 (Fla. 3d DCA 1992) (requiring direct injury as a result of predicate acts).

For these reasons, El Paso/Coastal is therefore entitled to summary judgment as to Count IV of the Second Amended Complaint.

### 4. Count v. Fails as a Matter of Law

■ In Count V of the Second Amended Complaint, Nicor and Carib allege that Coastal engaged in outrageous conduct that has caused Nicor and Carib severe emotional distress. This claim is fatally flowed because a corporation is incapable of suffering any emotional distress. Accordingly, El Paso/Coastal is therefore entitled to summary judgment as to Count V of the Second Amended Complaint.

### 5. Count VI Fails as a Matter of Law

In Count VI of the Second Amended Complaint, Nicor and Carib allege that Coastal breached its duty to utilize the Dominican courts to resolve the parties' controversy and its duty not to influence the Dominican courts. Nicor and Carib have failed to present any evidence that Coastal had a duty to utilize the Dominican courts to resolve the controversy between the parties. Indeed, any such duty flies in the face of the parties' binding Arbitration Provision. Moreover, as discussed *supra*, Nicor and Carib have not provided any evidence of a causal connection between

Coastal's conduct, including the OPIC letter, and any injury allegedly suffered by Nicor. Accordingly, Nicor and Carib's claim for negligence also fails as a matter of law. Therefore, El Paso/Coastal is entitled to summary judgment as to Count VI of the Second Amended Complaint.

In brief summary, Nicor and Carib have failed to prevail on Counts II, III, IV, V, and VI of the Second Amended Complaint. In addition, as discussed *supra*, Nicor and Carib have failed to prevail on Count I of the Second Amended Complaint. Accordingly, El Paso/Coastal is entitled to summary judgment as to each of the claims in the Second Amended Complaint.

### V. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Defendant's Motion for Summary Judgment, filed September 4, 2002, as to the Second Amended Complaint (DE 11) is **GRANTED**, and Defendant's Motion for Summary Judgment, filed September 4, 2002, as to Count I of the Counterclaim (DE 13) is **GRANTED**. The Defendant/Counter-Plaintiff is entitled to summary judgment as to all of the claims in the Amended Complaint and Count I of the Counterclaim.